**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ELAINE JACKSON, individually and | § | |
| as next friend of CHEIKH JACKSON | § | |
| and OKOFO JACKSON, and | § | |
| DEWAYNE CHARLESTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-3086 |
| | § | |
| WALLER INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case involves challenges by taxpayers to a school bond election held on May 12, 2007. The plaintiffs filed suit first in state, then in federal, court. The Texas courts rejected the relief the plaintiffs seek. For the reasons explained in detail below, this court holds that the plaintiffs cannot obtain in this federal court the relief that the state courts have refused to provide. As a result, the plaintiffs' claims that the 2007 Waller Independent School District (WISD) bond election and bonds violate the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, the Equal Educational Opportunity Act, 20 U.S.C. § 1701 *et seq.*, and 42 U.S.C. § 1983 are dismissed. The plaintiffs' requests for injunctions preventing Texas Attorney General Greg Abbott from approving the bonds and preventing the Waller County state court from awarding damages to the WISD for any delays in the issuance of its bonds are denied.

The motions relating to a recently raised challenge to the scheduled May 2008 election are set for a preliminary status hearing on April 1, 2008 at 10:00 a.m.

## I.     Background

At a special meeting held on March 11, 2007, the WISD Board of Trustees unanimously voted to approve a $49.29 million facilities-improvement bond plan to present to voters.  (Docket Entry No. 7, Exs. B, C, D).  On March 26, 2007, the Board held another special meeting and voted to approve a restatement of the original bond election resolution. (*Id.*, Exs. B, F, G).  The facilities-improvement plan allocated the money to be raised toward different projects, including a elementary school, a new district sports stadium, school buses, new technology office space, school buses, and renovations at all campuses.

The WISD scheduled the special election on the bond proposition for May 12, 2007. (Docket Entry No. 7, Ex. G).  This was also the statewide election date for constitutional amendments, for Waller's City Council, and for members of the WISD Board of Trustees. If the WISD met an August 31, 2007 deadline for beginning payments on the bonds, the school district could qualify for $20 million in matching state funds under the Existing Debt Allotment ("EDA") state finance program.  The United States Department of Justice granted preclearance for the selected voting site and date on August 8, 2007.  (*Id.*, Ex. I).[1]

---

[1]  The DOJ letter was dated August 8, 2007 and stated: "This refers to the procedures for conducting the May 12, 2007, special bond election, for the Waller Independent School District in Harris and Waller Counties, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. We received your response to our May 29, 2007 request for additional information on June 21, 2007; supplemental information was received on July 11, 2007. The Attorney General does not interpose any

The bond election carried by a vote of 770 to 446.  This was the largest bond election ever held in the WISD and the largest margin to approve a bond.  (Docket Entry No. 7, Exs. B at 65, J).  On May 22, 2007, the WISD board canvassed the election results and declared the bonds passed.  (*Id.*, Exs. B at 31–32, J).

On August 9, 2007, DeWayne Charleston, a taxpayer in the WISD, sued the WISD in state court in Harris County, Texas, seeking declaratory and injunctive relief.  Charleston alleged that the WISD did not provide sufficient notice of the special meetings it held to have a bond election.  Charleston challenged the notice as insufficient to meet the requirements of the Texas Open Meetings Act, TEX. GOV'T CODE § 551.001 *et seq.*  (Docket Entry No. 7, Ex. K).  Charleston sought a declaratory judgment that all the WISD special meetings held during 2007, including those meetings approving and scheduling the bond election, were invalid and void.  He also asked that the May 12, 2007 bond election be declared void.

On August 20, 2007, the WISD filed suit in state court in Waller County, Texas under the Texas Expedited Declaratory Judgment Act ("EDJA"), TEX. GOV'T CODE § 1205, *et seq.*  The WISD sought a declaratory judgment that the bonds were valid.  On August 21, 2007, the Harris County court held a hearing on Charleston's request for a TRO prohibiting the WISD from holding any meetings on the ground that the notice for the meetings violated the

---

objection to the specified changes.  However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes.  In addition, as authorized by Section 5, we reserve the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period."

Open Meetings Act.  The court denied the TRO application.  On August 29, 2007, the Waller

County court issued a notice under the EDJA's notice provision, informing all residents and

property holders in the WISD of a hearing and trial on the WISD's bond-validation

declaratory judgment suit.  The hearing and trial date were set for September 24, 2007.[2]

(Docket Entry No. 7, Ex. M).  The court's clerk published the notice in newspapers of

general circulation in Waller County, Harris County, and Travis County.  (*Id.*, Exs. N, O).

The Texas Attorney General filed an answer in the Waller County bond-validation

suit, stating that he would not appear at trial or object to the relief sought and would "support

such adjudication of this cause as this Court determines appropriate."  (*Id.*, Ex. P at 2).  At

the September 24, 2007 hearing and trial, Charleston filed an intervention in the Waller

---

[2] Section 1205.043 of the EDJA provides:

(a) The clerk of the court shall give notice by publishing a substantial copy
of the order issued under Section 1205.041(a) in a newspaper of general
circulation in:

(1) Travis County;

(2) the county where the issuer has its principal office; and

(3) if the issuer has defined boundaries, each county in
which the issuer has territory.

(b) the Notice shall be published once in each of two consecutive calendar
weeks, with the date of the first publication before the 14th day before the
trial date.

TEX. GOV'T CODE § 1205.043.

County suit.  (Docket Entry No. 7, Ex. Q).  On the same day, Charleston and Jackson filed this suit in federal court, alleging that the bond election and bonds violated federal law.

On the date for the trial set in the Waller County suit, Charleston submitted a copy of the federal complaint and moved to abate the state-court proceedings on the ground that "issues" in the federal-court suit "will take priority" over the state-court suit. (Docket Entry No. 7, Ex. B at 19).  The state court denied the motion to abate.  (*Id.*, Ex. B at 20).  At the trial, Charleston's counsel cross-examined the WISD Board president about the allegedly discriminatory allocation of bond funds, asking the president about the decision to spend $17 million of the bond proceeds on a football stadium when the WISD is "considered to be poor." (*Id.*, Ex. B at 47–51).  Counsel for the WISD objected on the ground that Charleston's state-court pleadings did not challenge the allocation of bond funds as racially discriminatory or otherwise unconstitutional.  (*Id.*, Ex. B at 47).  The state court sustained the objection. Charleston continued cross-examining the WISD Board president on the allegedly discriminatory allocation of bond funds, asking if the president considered Jones Elementary, the only WISD elementary school that serves the predominantly African-American city of Prairie View, to be "beautiful" or "dilapidated." (*Id.*, Ex. B at 48–50).  The state court did not strike the testimony but expressed concern over substituting its judgment "about matters that are within the peculiar knowledge of the people who administer a school district to overturn the decisions they've made." (*Id.*, Ex. B at 51).

On October 2, 2007, the Waller County court issued a declaratory judgment in the bond-validation suit, upholding the validity of the meeting notices, the bond election, and the bonds. (Docket Entry No. 7, Ex. R).  On the same day, the Waller County court held a hearing on the WISD's motion for security based on section 1205.101 of the EDJA, which allows a bond issuer to move to dismiss any opposing party or intervenor, other than the attorney general, unless that party posts a bond with sufficient security to compensate the bond issuer for any delays caused by the party's continued participation.  The WISD presented evidence that the inflation rate for construction in the Houston area was approximately 14% and that delays of three to nine months would cause WISD to incur increased construction costs of approximately $266,508 to $1,164,870. (*Id.*, Ex. S).  Finding that the WISD would sustain costs of at least $715,000 if Charleston filed an appeal, the Waller County court ordered Charleston to post a $715,000 bond payable to the WISD before October 13, 2007 and entered a final judgment upholding the validity of the bond election and bonds. (*Id.*, Ex U).  Charleston did not post the security bond.  On October 13, 2007, the Waller County court held a hearing on the WISD's motion to dismiss Charleston as a party of record.  Because Charleston had failed to post the bond, the Waller County court dismissed him from the case.  (*Id.*, Ex. V).  On the same day, the Waller County court also considered Charleston's renewed motion to dismiss the state-court suit in favor of the federal-court suit and denied the motion.  (*Id.*, Ex. W).

6

Charleston appealed both the state-court judgment and the order that he post a security bond.  On December 21, 2007, the appellate court held that it lacked jurisdiction to consider Charleston's appeal because he had failed to post the necessary bond.  *Charleston v. Waller Indep. Sch. Dist.*, --- S.W.3d ----, 2007 WL 4465451, at *7 (Tex. App.—Houston [1st Dist.] Dec. 21, 2007, no pet.).  Charleston petitioned the Texas Supreme Court for a writ of mandamus. On December 24, 2007, the plaintiffs served the WISD in this lawsuit.  On March 14, 2008, the Texas Supreme Court denied Charleston's petition for writ of mandamus.

In this federal suit, the WISD has moved to dismiss the plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6). (Docket Entry No. 7).  The WISD argues that under Texas law, bond proceeds are a *res* over which only one court may exercise jurisdiction.  Because the Waller County court first obtained jurisdiction over the bond proceeds in the WISD's declaratory judgment action, and because EDJA actions are proceedings *in rem* under Texas law, the WISD argues that the Waller County court's jurisdiction over the bond proceeds is exclusive under *Princess Lida v. Thompson*, 305 U.S. 462, 466 (1939).  The WISD also argues that the Waller County court's final judgment deprives this court of jurisdiction over the plaintiffs' claims under the *Rooker–Feldman* doctrine and bars the plaintiffs' claims under *res judicata*.  In addition, the WISD challenges the sufficiency of the plaintiffs' claims under the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, the Equal Educational Opportunity Act, 20 U.S.C. § 1706 *et seq.*, and 42 U.S.C. § 1983.

In response, the plaintiffs argue that the Waller County court's final judgment, "which purports to enjoin proceedings such as this one, is void on its face" under *Donovan v. City of Dallas*, 377 U.S. 408 (1964).  The plaintiffs argue that the "federal law [p]laintiffs' actions are not *in rem* proceedings" but rather *in personam* proceedings and that under *Donovan*, state courts have no power to enjoin *in personam* proceedings in federal courts.  (Docket Entry No. 11 at 6).  The plaintiffs contend that the Waller County state court lacked personal jurisdiction over them because the WISD failed to provide adequate notice of the declaratory judgment action.  As a result, according to the plaintiffs, the state court's judgment has no *res judicata* effect.  The plaintiffs cite *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962), for the proposition that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." (*Id.* at 8).  The plaintiffs argue that the Waller County court's judgment is unenforceable against them because they did not receive constitutionally sufficient notice of the declaratory judgment action.  The plaintiffs argue that the EDJA is "unconstitutional as written and as applied to the extent that it permits state courts to enjoin proceedings in federal court and to the extent that it permits service by publication" and move for summary judgment on this issue.  (*Id.* at 13).

The plaintiffs further contend that the Waller County court's final judgment has no collateral estoppel effect against them because Charleston did not submit federal claims in that state court case and his federal claims were not adjudicated.  Relying on *Donovan*, the

8

plaintiffs argue that state courts cannot circumscribe their right to pursue their causes of action in federal court.  The plaintiffs also assert that they adequately pleaded violations of the Voting Rights Act, the Civil Rights Act, the Equal Educational Opportunity Act, and the Fourteenth and Fifteenth Amendments to the United States Constitution.  Lastly, the plaintiffs move to amend their complaint to remove Charleston—who intervened in the Waller County suit—as a plaintiff and to add Coralia Lourenco, individually and as next friend of Antonio Felipe Vila-Lourenco, and David Narmah—who did not participate in the Waller County suit—as plaintiffs in this federal case.

After the Texas Supreme Court denied Charleston's petition for writ of mandamus on March 14, 2008, the plaintiffs filed an emergency motion in this court seeking leave to amend, (Docket Entry No. 16), and a motion for emergency relief, (Docket Entry No. 15).  In their emergency motion to amend, the plaintiffs seek to add David Narmah as a plaintiff and to add allegations that the WISD has changed its early voting plans for the May 10, 2008 WISD Board of Trustees election without obtaining the preclearance from the United States Attorney General required by 42 U.S.C. § 1973c.  The plaintiffs seek to add claims for violations of 42 U.S.C. § 1973c and section 11.0581 of the Texas Education Code.  In their motion for emergency relief, the plaintiffs ask this court to grant summary judgment on their claim that the EDJA was unconstitutional in allowing publication notice of the state-court bond-validation declaratory judgment action.  The plaintiffs ask this court to issue a TRO to prevent Texas Attorney General Greg Abbott from approving the proposed bonds.  (Docket

Entry No. 15).  The plaintiffs also ask this court to enjoin the WISD from changing its early voting times and locations for the May 10, 2008 trustee elections and to enjoin the Waller County court from awarding damages to WISD for the delay in issuing the bonds.

The arguments are examined below.

## II.    The Legal Standards

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).  When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial

authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir.1997).

**B.   Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b) (6). The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim. In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

When a plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at

11

least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

## III.   Analysis

### A.   Preclusion

The WISD argues that the Waller County court's final judgment declaring the bonds valid bars the plaintiffs' claims in this court that the 2007 bond election and the bonds are invalid.  The WISD notes that plaintiff Charleston intervened to become a party in the Waller County suit and actually participated at the trial.  Although Jackson and the proposed new plaintiffs, Lourenco and Narmah, were not named parties in the Waller County proceeding, the WISD argues that under the EDJA, "the judgment in the state court acts as a class action binding on all people residing in the district."[3]  (Docket Entry No. 7 at 19).  The EDJA

---

[3] Section 1205.023 of the EDJA states:

An action brought under this chapter is:

. . .

provides that a district court's final judgment upholding the validity of public securities is "binding and conclusive" against all parties to the action as to "each adjudicated matter and each matter that could have been raised."[4]  TEX. GOV'T CODE § 1205.151(b).  The WISD

---

    (2) a class action binding on all persons who:

        (A) reside in the territory of the issuer;

        (B) own property located within the boundaries of the issuer;

        (C) are taxpayers of the issuer; or

        (D) have or claim a right, title, or interest in any property or money to be affected by the public security authorization or the issuance of the public securities.

[4] Section 1205.151 of the EDJA states:

    (a) This section applies to a final judgment of a district court in an action under this chapter that holds that:

        (1) the issuer had or has the authority on the terms set out in the issuer's petition to:

            (A) issue the public securities; or

            (B) take each public security authorization; and

        (2) each public security authorization and expenditure of money relating to the public securities was legal.

    (b) The judgment, as to each adjudicated matter and each matter that could have been raised is binding and conclusive against:

        (1) the issuer;

argues that because the plaintiffs could have brought, and Charleston attempted to bring, all the federal-law claims in the Waller County suit, the Waller County court's judgment is binding and bars litigating those claims in this court.

The plaintiffs respond that the Waller County court's final judgment is not preclusive because that court lacked personal jurisdiction over them.  The plaintiffs contend that the publication notice they received of the WISD's declaratory judgment action was unconstitutional and that "[t]o the extent the EDJA permits notice solely by publication . . . it is unconstitutional."  (Docket Entry No. 11 at 8). Relying on *Schroeder*, 371 U.S. at

---

       (2) the attorney general;

       (3) the comptroller; and

       (4) any party to the action, whether:

              (A) named and served with the notice
              of the proceedings, or

              (B) described by Section 1205.041(a).

Section 1205.041(a) directs a "court in which an action under this chapter is brought" to issue notice of the action to all persons who:

       (1) reside in the territory of the issuer;

       (2) own property located within the boundaries of the issuer;

       (3) are taxpayers of the issuer; or

       (4) have or claim a right, title, or interest in any property or money to
       be affected by a public security authorization or the issuance of the
       public securities.

212–13, the plaintiffs argue that publication notice is constitutionally deficient "with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." (*Id.* at 8). The plaintiffs contend that as taxpayers and residents of the WISD, their identities were reasonably ascertainable and that they were constitutionally entitled to individual mail notice rather than publication notice of the Waller County bond-validation action.  The plaintiffs argue that the publication notice they received was inadequate to subject them to personal jurisdiction in the Waller County court and to give that court's judgment preclusive effect. The plaintiffs also argue that the Waller County court's judgment has no preclusive effect as to them because they did not litigate their claims in the Waller County court, which sustained an objection to questions by Charleston's counsel about the allegedly unconstitutional allocation of the bond proceeds.

The WISD responds that individual mail notice to each taxpayer residing in the district is not constitutionally required and that the EDJA's provision for publication notice is constitutional.

### 1.     *Personal Jurisdiction and the Sufficiency of Notice under the EDJA*

In their motion for emergency relief, the plaintiffs acknowledge that the Waller County court had personal jurisdiction over Charleston because he intervened and appeared in the Waller County suit.  Jackson contends that the Waller County court lacked personal jurisdiction over her because the notice by publication allowed by the EDJA was

15

unconstitutional.  (Docket Entry No. 15 at 2).  The plaintiffs have also moved for leave to amend their complaint to remove Charleston as a plaintiff and to add Coralia Lourenco, individually and as next friend of Antonio Felipe Vila-Lourenco, and David Narmah as plaintiffs.  (Docket Entry No. 16).  Lourenco and Narmah did not participate in the Waller County action.

In considering due process challenges to the sufficiency of notice to parties with an interest in a legal proceeding, the Supreme Court applies the analysis set out in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).  *See Dusenbery v. U.S.*, 534 U.S. 161, 167–68 (2002) (noting that "[s]ince *Mullane* was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice.") (citations omitted).  Under *Mullane*, notice is constitutionally sufficient if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.  The notice must reasonably convey the required information and afford a reasonable time for interested parties to make an appearance.  *Id.* (citations omitted).  "[I]f with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied."  *Id.* at 314–15.  The Supreme Court has acknowledged that it is "impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation." *Schroeder*, 371 U.S. at 212.

16

A number of courts considering due process challenges to publication notice of bond validation proceedings under statutes very similar to the EDJA have held that such notice is constitutionally sufficient.  *See, e.g.*, *Denham Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners and Citizens of Denham Springs Econ. Dev. Dist.*, 945 So.2d 665, 683–83 (La. 2006) (finding that "no constitutionally protected property interest is involved" in a bond validation proceeding, such that publication notice is constitutionally sufficient); *Ambac Indem. Corp. v. Akridge*, 425 S.E.2d 637, 639 (Ga. 1993) (finding that publication notice "satisfied the constitutional requirement of due process by giving residents and taxpayers adequate notice of the subject of the hearing and of their opportunity to be heard"); *Thomas v. Ala. Mun. Elec. Auth.*, 432 So.2d 470, 744 (Ala. 1983) (noting that "provisions, authorizing service of process by newspaper publication in 'bond validation suits,' have been upheld by this court against the claim that such provisions do not comport with due process requirements" and holding that "[s]ervice of process by publication is acceptable where other methods do not offer a sensible or effective way of notifying parties to an action of the pendency of that action") (citing *Salmon v. Birmingham Parking Auth.*, 314 So.2d 687 (Ala. 1975) (holding that "the failure of the Legislature to require personal service on every 'taxpayer and citizen'" does not render bond validation provisions unconstitutional)); *Application of Oklahoma Turnpike Auth.*, 221 P.2d 795, 812 (Okla. 1950) (affirming that publication notice "constitutes due and proper notice of such proceeding [to validate bonds], and is not violative of the due process clause of the Constitution"); *cf. Yoakum County Water*

17

*Control and Improvement Dist. v. First State Bank*, 433 S.W.2d 200, 207 (Tex. Civ.
App.—Tyler 1968) *aff'd*, 449 S.W.2d 775 (Tex. 1969) (holding that "personal service on
every person within a proposed water control and improvement district of the petition to
organize the district is not essential to due process").  Only one case has reached a different
result.  *See Ridenour v. Bay County*, 114 N.W.2d 172, 178–79 (Mich. 1962) (affirming trial
court's holding that in a district of approximately 500 residents, any party in interest "whose
name and address was known to or reasonably ascertainable by the [defendant], and who [in]
fact received no notice by mail or otherwise of the hearing to review the special assessment
. . . and who did not attend said hearing, would be entitled to demand notice of and a hearing
to review the special assessment").

The EDJA's notice provision is similar to the notice provisions upheld in the majority
of cases.  In these cases, the courts have emphasized that multiple publications of the notice
in newspapers of general circulation were required, with the last publication appearing a set
number of days before the validation hearing date.

The plaintiffs rely on *Schroeder* and related cases to support their argument that
individual mail notice is required when the identities of interested parties can be determined.
These cases requiring individual mail notice involve private rights to money and to real
property.  *See Tulsa Prof. Coll. Svcs., Inc. v. Pope*, 485 U.S. 478 (1988) (creditors' claims
against a deceased's estate under state probate code); *Schroeder*, 371 U.S. at 212–13
(condemnation proceedings relating to plaintiff's real property); *Acevedo v. First Union Nat'l*

18

*Bank*, 476 F.3d 861 (11th Cir. 2007) (plaintiff's claim to FDIC-insured bank deposits in failed bank); *Brody v. Village of Port Chester*, 509 F. Supp. 2d 269 (S.D.N.Y. 2007) (condemnation proceedings relating to plaintiff's real property).   The private property interests at stake in these cases present different due process considerations than the public interest in the bond validation proceeding at issue in this case.   Applying the *Mullane* analysis, the *Denham Springs* court noted:

> The individual defendants' right to challenge the provisions of the Bond Resolution made for the security and payment of the bonds does not bear the hallmarks of a constitutionally protected liberty or property interest.   It does not constitute a right associated with liberty, nor is the right exclusive to defendants in a property context.   The individual defendants do not have the power to prevent others from asserting the challenge; the constitutional and statutory language extend the right to any person in interest.   Moreover, the individual defendants have not demonstrated how the right to assert the challenge has an ascertainable monetary value. . . .
>
> Because no constitutionally protected property interest is involved in this case, the State is free to limit and restrict the right to assert any challenge without violating due process requirements. See Richards, 517 U.S. at 803, 116 S.Ct. at 1768.

*Denham Springs,* 945 So.2d at 683.

The EDJA is also similar to the statutes upheld by numerous courts in treating a bond-validation declaratory judgment action as a class action binding on residents, taxpayers, and property owners of the issuer.   *Compare* TEX. GOV'T CODE § 1205.023 (stating that an "action brought under this chapter" is "a class action binding" on people who reside or own property in the territory of the issuer, or who are taxpayers of the issuer) with ALA. CODE §

11-81-224 (2007) (stating that a judgment validating a bond issuance "shall be forever conclusive as to the validity of such obligations against the unit issuing them and against all taxpayers and citizens of each organizing subdivision"); LA. REV. STAT. § 18:1294 (2004) (stating that for sixty days after the results of a bond election are disclosed, "any person in interest may contest the legality of the election," after which time "the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters").  In treating bond-validation declaratory judgment proceedings as class actions and providing for publication notice, these statutes are consistent with Federal Rule of Civil Procedure 23, which allows class actions seeking declaratory or injunctive relief "respecting the class as a whole" when "the party opposing the class has acted or refused to act on grounds that apply generally to the class." FED. R. CIV. PRO. 23(b)(2).  Rule 23 also allows class actions when "inconsistent or varying adjudications with respect to individual class members . . . would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. PRO. 23(b)(1)(A).  The 1966 advisory committee notes to Rule 23(b)(1)(A) point out:

> One person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct. . . . *To illustrate: Separate actions by individuals against a municipality to declare a bond issue invalid or condition or limit it, to prevent or limit the making of a particular appropriation or to compel or invalidate an assessment, might create a risk of inconsistent or varying*

> *determinations.* . . . Actions by or against a class provide a ready
> and fair means of achieving unitary adjudication. *See Maricopa
> County Mun. Water Con. Dist. v. Looney*, 219 F.2d 529 (9th Cir.
> 1855); *Rank v. Krug*, 142 F. Supp. 1, 154–59 (S.D. Calif. 1956),
> on app. *State of California v. Rank*, 293 F.2d 340, 348 (9th Cir.
> 1961); *Gart v. Cole*, 263 F.2d 244 (2d Cir. 1959), cert. denied
> 359 U.S. 978 (1959); *cf. Martinez v. Maverick County Water
> Con. & Imp. Dist.*, 219 F.2d 666 (5th Cir. 1955); 3 Moore's
> *Federal Practice,* par. 23.11[2], at 3458–59 (2d ed. 1963).

FED. R. CIV. PRO. 23(b)(1)(A) Committee Note (1966) (emphasis added). In these types of

class actions, "the court may direct appropriate notice to the class;" indivudal notice is not

constitutionally required. FED. R. CIV. PRO. 23(c)(2)(A). Courts have found publication

notice for such class actions to be constitutionally sufficient. *See Handschu v. Special Servs.

Div.*, 787 F.2d 828 (2d Cir. 1986) ("Likewise, the method chosen to disseminate the

notice—publication over a period of weeks in several metropolitan New York

newspapers—adequately served to notify class members that a potential compromise had

been reached. Because of the common interests of all its members, a Rule 23(b)(2) class

seeking declaratory and injunctive relief is cohesive by nature."); *Franks v. Kroger Co.*, 649

F.2d 1216, 1222–23 (6th Cir. 1981) (allowing publication notice in Rule 23(b)(2)

discrimination class action); *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1181 (D. Kan. 2002)

(approving publication notice in Rule 23(b)(2) discrimination class action).

    The weight of authority on the constitutionality of publication notice for bond-

validation declaratory judgment actions brought under similar state statutes shows that the

publication notice authorized by section 1205.043 of the EDJA was constitutionally

sufficient.  Notice of the declaratory judgment action was published twice in the *Houston Chronicle* and the *Austin American-Statesman*.  The notices timely conveyed the information necessary for interested parties to understand the nature of the action and make an appearance.  Under the circumstances, the notice was reasonably calculated to inform the WISD residents of the bond-validation action and afforded them an opportunity to present objections, as Charleston did by intervening and appearing in the Waller County trial.

Because the publication notice under section 1205.043 of the EDJA was constitutionally sufficient, the Waller County court had personal jurisdiction over the plaintiffs and over all other WISD residents, property owners, and taxpayers, as necessary for preclusive effect.

> 2.     *The Preclusive Effect of Waller County Court's Final Judgment*

The preclusive effect of prior state-court proceedings on federal proceedings is determined by the treatment those state-court proceedings would receive in the courts of the state in which those proceedings were held.  *See Norris v. Hearst Trust*, 500 F.3d 454, 460–61 (5th Cir. 2007) (citing *Production Supply Co., Inc. v. Fry Steel Inc.*, 74 F.3d 76, 78 (5th Cir. 1996)).  The EDJA states:

> An action brought under this chapter is:
>
> . . .
>
>> (2) a class action binding on all persons who:

(A) reside in the territory of the issuer;

(B) own property located within the boundaries of the issuer;

(C) are taxpayers of the issuer; or

(D) have or claim a right, title, or interest in any property or money to be affected by the public security authorization or the issuance of the public securities.

TEX. GOV'T CODE § 1205.023(2).

The EDJA states that a final judgment upholding the legality and authorization of public securities is "binding and conclusive" against the issuer, the attorney general, the comptroller, and any party to the action, including taxpayers of the issuer and people who reside or own property within the boundaries of the issuer. TEX. GOV'T CODE §§ 1205.151(a), (b). The judgment is binding and conclusive "as to each adjudicated matter and each matter that could have been raised." *Id.* § 1205.151(a). The parties do not dispute that the Waller County court issued a final judgment, which the Texas appellate courts have declined to reverse.

Citing *Donovan*, the plaintiffs assert that "a state court cannot compel a party to bring his federal claims in state court." (Docket Entry No. 11 at 9). In *Donovan*, 46 Dallas residents who owned or had interests in property near a Dallas municipal airport filed a class action in state court to restrain the City of Dallas from issuing and selling municipal bonds

23

to build an additional runway at the airport. The state court granted summary judgment in favor of the City; a Texas appellate court affirmed; the Texas Supreme Court denied review; and the United States Supreme Court denied *certiorari*. 377 U.S. at 408–09. Later, 120 Dallas residents, including 27 of the plaintiffs in the earlier state-court suit, filed another action in federal court, seeking to enjoin construction of the runway and the issuance of bonds. While this suit was pending in federal court, the City petitioned the Texas appellate court and the Texas Supreme Court for a writ of mandamus, asking these courts to enjoin the federal-court proceeding. The Texas Supreme Court issued an order under which the Texas appellate court enjoined the plaintiffs in the federal-court case from pursuing litigation to contest the validity of the airport revenue bonds. The federal district court dismissed the federal case. When the plaintiffs objected to the dismissal and appealed to the Fifth Circuit, the Texas appellate court held the plaintiffs in contempt. *Id.* at 409–11. The United States Supreme Court reversed the holding of contempt and held that the Texas Supreme Court had erred in directing the appellate court to enjoin the plaintiffs from pursuing their federal-court suit. The *Donovan* court found that the plaintiffs in the second suit "had a right to do this, a right which is theirs by reason of congressional enactments passed pursuant to congressional policy." *Id.* at 412. "[W]hether or not a plea of res judicata in the second suit would be good is a question for the federal court to decide." *Id.*

The *Donovan* court did not hold that the federal court in the second suit could not or should not decide whether *res judicata* applied. *Donovan* did not hold that an unsuccessful

state-court plaintiff may relitigate claims in federal court that he brought or should have brought in the prior state-court proceeding.  To the contrary, the *Donovan* court recognized that a federal court may consider whether the *res judicata* effects of the state-court suit bar the plaintiff's claims.

State and federal courts have concurrent jurisdiction over claims arising under federal law unless Congress has expressly divested the state courts of their jurisdiction over a federal cause of action.  *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).  The plaintiffs do not contend that Congress has given federal courts exclusive jurisdiction over their claims under the Voting Rights Act, the Civil Rights Act, the Equal Educational Opportunity Act, and the Fourteenth and Fifteenth Amendments.  As the *Donovan* court acknowledged, both a state court and a federal court, "having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other."  377 U.S. at 412 (quoting *Princess Lida*, 305 U.S. at 465). *Donovan* does not preclude this federal court from determining that *res judicata* applies to the plaintiffs' federal claims.

The Waller County court had jurisdiction over the plaintiffs and issued a final judgment.  That final judgment is binding against the plaintiffs as to the claims that they did raise and the claims that they could have raised, including their claims under the Voting Rights Act, the Civil Rights Act, the Equal Educational Opportunity Act, the Fourteenth and Fifteenth Amendments, and 42 U.S.C. § 1983.  The claims in this court alleging that the 2007

25

bond election and bonds violate the Voting Rights Act, 42 U.S.C. § 1703, the Equal Educational Opportunity Act, 20 U.S.C. § 1706, the Fourteenth and Fifteenth Amendments, and 42 U.S.C. § 1983 are barred by *res judicata*.

The plaintiffs have filed a motion for leave to amend their complaint to remove Charleston as a plaintiff and to add Coralia Lourenco, individually and as next friend of Antonio Felipe Vila-Lourenco, and David Narmah as plaintiffs.  The WISD opposes the motion as futile, "at least with respect to the claims previously asserted in Plaintiffs' original Complaint," because such an amendment "would not cure the res judicata and jurisdictional deficiencies of Plaintiffs' claims concerning the validity of the bond election."  (Docket Entry No. 13 at 9–10).

An action brought under the EDJA is a class action binding on the taxpayers of the bond issuer and people who reside or own property within the territory of the bond issuer. TEX. GOV'T CODE § 1205.023(2).  The final judgment issued in the Waller County action precludes the plaintiffs in this case and other WISD taxpayers, residents, or property owners from challenging the validity of the bond election or the bonds.  The plaintiffs' first motion for leave to amend their complaint is granted as to the change in plaintiffs, but granting leave to amend does not alter the *res judicata* analysis.  Leave to amend is denied as to the constitutional challenges to the EDJA and as to the federal law challenges to the 2007 bond election and bonds under the Voting Rights Act, the Equal Educational Opportunity Act, 42 U.S.C. § 1983, and the Fourteenth and Fifteenth Amendments.  Because the plaintiffs cannot

26

allege facts that would "possibly cure the deficiency," leave to amend their claims challenging the validity of the 2007 bond election and the bonds would be futile.  *See Schreiber*, 806 F.2d at 1401.

The plaintiffs' challenges to the validity of the bond election and the allocation of the bond proceeds under the Voting Rights Act, 42 U.S.C. § 1703, the Equal Educational Opportunity Act, 20 U.S.C. § 1706, and 42 U.S.C. § 1983 are dismissed on the ground of *res judicata*.

### B.   The *Rooker–Feldman* Doctrine

The WISD also argues that the plaintiffs' claims are barred by the *Rooker–Feldman* doctrine and that this court "lacks jurisdiction to revisit the state court judgment."  (Docket Entry No. 7 at 17).  Citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 479 (1983), the WISD argues that "[o]nce a state court issues a final judgment, a federal district court lacks jurisdiction to review the decision even if the state court judgment is patently wrong or was entered following patently unconstitutional proceedings." (*Id.* at 17). Because the Waller County court entered a final judgment on the merits that is binding on the plaintiffs, the WISD argues that the plaintiffs may not seek review of that judgment in this court by recasting their complaint in the form of a civil rights action.

The plaintiffs argue that the Waller County court judgment is void because that court lacked personal jurisdiction over the plaintiffs.  As discussed above, this argument is against the weight of authority and lacks merit.  The Waller County court had personal jurisdiction

27

over the plaintiffs and its final judgment is binding on all people who reside in, own property in, or pay taxes to the WISD.  The *Rooker–Feldman* doctrine applies when the losing party in a state court effectively acts a federal district court to review and reject the state-court judgment, as the plaintiffs seek in this case.  The plaintiffs' claims in this court are barred by the *Rooker–Feldman* doctrine, which precludes a federal court from exercising original jurisdiction to "review and reverse" state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

### C.      The Issue of Damages in the State Court

The plaintiffs also seek an injunction preventing the Waller County court from awarding damages to the WISD for delays in the bond issuance and preventing that court from proceeding with discovery related to damages in the Waller County action until this federal-court litigation is resolved.  Because the federal claims relating to the 2007 bond election and bonds are dismissed, the requested injunctive relief is also moot.

In addition, such an injunction would violate the Anti-Injunction Act, 28 U.S.C. § 2283, which states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by an Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  None of the exceptions to the Anti-Injunction Act applies to the relief the plaintiffs seek.

The plaintiffs' request for an injunction to prevent the Waller County court from awarding damages to the WISD for delays in the bond issuance is denied.

### D.    The Claims as to the May 10, 2008 Trustee Election

In their second motion for leave to amend their complaint, the plaintiffs seek to add a claim alleging a violation of section 1973c of the Voting Rights Act.  (Docket Entry No. 16).  The plaintiffs assert that at a special meeting of the WISD Board of Trustees on August 4, 2007, the Board "agreed to provide early voting opportunities at the same time and location as the City of Prairie View."  (Docket Entry No. 15 at 4).  Although Prairie View posted notice that it will provide two days of early voting at an on-campus site at PVAMU, the plaintiffs assert that the WISD "has reneged and now states that it will provide only one day of early voting at a site off campus."  (*Id.* at 4).  The plaintiffs contend that the WISD has not obtained preclearance from the U.S. Attorney General for the change in its early voting plans, as required under 42 U.S.C. § 1973c(a).  In their motion for emergency relief, the plaintiffs ask this court to enjoin the WISD from changing its early voting times and locations in Prairie View for the May 10, 2008 trustee elections.  (Docket Entry No. 15).

The WISD points out that the plaintiffs' injunction request "concerns an upcoming election for the WISD Board of Trustees, and has nothing to do with the May 12, 2007 bond election or the bond issuance."  (Docket Entry No. 19 at 11).  The WISD also asserts that the U.S. Attorney General had already precleared the WISD's early voting locations for the upcoming election and that the WISD has made no change from these precleared voting procedures.

The WISD has not yet responded to the plaintiffs' motion for leave to amend to file a second amended complaint asserting violations of 42 U.S.C. § 1973c.  A hearing on the plaintiffs' motion for leave to amend and request for injunctive relief is set for April 1, 2008 at 10:00 a.m.

## IV.    Conclusion

The plaintiffs' claims that the 2007 bond election and bonds violate the Voting Rights Act, 42 U.S.C. § 1973 *et seq.*, the Equal Educational Opportunity Act, 20 U.S.C. § 1701 *et seq.*, and 42 U.S.C. § 1983 are dismissed.  The plaintiffs' requests for injunctions preventing Texas Attorney General Greg Abbott from approving the bonds and preventing the Waller County court from awarding damages to the WISD for delays in the issuance of its bonds are denied.  A hearing on the plaintiffs' motion for leave to amend to add a claim regarding the upcoming May 10, 2008 election and the plaintiffs' request for an  injunction preventing the WISD from changing its early voting locations is scheduled for **April 1, 2008, at 10:00 a.m.**

SIGNED on March 24, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge