**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ELAINE JACKSON, individually and | § | |
| as next friend of CHEIKH JACKSON | § | |
| and OKOFO JACKSON, and | § | |
| DEWAYNE CHARLESTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-3086 |
| | § | |
| WALLER INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case involves challenges to the May 10, 2008 school trustee elections of the

Waller Independent School District ("WISD"). The plaintiffs, Elaine Jackson and DeWayne

Charleston, initially sued the WISD to challenge the validity of its May 12, 2007 bond

election and the bonds that the voters approved in that election. On March 24, 2008, this

court dismissed the plaintiffs' claims, (Docket Entry No. 22), but allowed the plaintiffs leave

to amend to assert claims relating to the WISD school trustee elections scheduled for May

10, 2008. (Docket Entry No. 31). In their third amended complaint, the plaintiffs allege that

the early-voting locations and the date for the May 10, 2008 school board election

unconstitutionally deter African-American voter participation and dilute African-American

votes, in violation of 42 U.S.C. §§ 1973 and 1973c. The plaintiffs allege that the WISD

failed to obtain preclearance from the United States Attorney General for all aspects of the

WISD's early-voting locations, as required under 42 U.S.C. § 1973c.  Among other things, the plaintiffs seek a preliminary injunction requiring the WISD to make one of the early-voting locations for the school board election the same place that the City of Prairie View is using for early voting for the City's May 10, 2008 mayor and city council election.  For election day itself, a voter in Prairie View can vote in the City and WISD school board elections at the same place.  The early-voting places are not "colocated."  The plaintiffs also seek an injunction requiring the WISD to hold its trustee election when Prairie View A&M University ("PVAMU") is in session rather than after spring-semester classes have ended.

The WISD moves to dismiss the plaintiffs' third amended complaint or, in the alternative, for summary judgment.  (Docket Entry No. 32).  The plaintiffs have responded, (Docket Entry No. 41), and the WISD has replied, (Docket Entry No. 42).  This court held a hearing on April 1, 2008, at which the parties presented arguments on the plaintiffs' claims relating to the May 10, 2008 election.  (Docket Entry No. 30).

Because the election is imminent, this memorandum and opinion addresses the motions only as they affect the plaintiffs' effort to enjoin the early voting set to begin on April 29, 2008.  Based on the motion, the response, the record, and the applicable law, this court grants in part the WISD's motion to dismiss or, in the alternative, for summary judgment.  The plaintiffs' request for a preliminary injunction preventing the WISD from holding its election when a majority of PVAMU students are scheduled to be away from campus is denied.  The plaintiffs' request for a preliminary injunction requiring the WISD

2

to colocate its Prairie View early-voting polling place with the City of Prairie View's early-voting polling place is denied.  The reasons are set out below.

## I.      Background

The WISD falls on the border of Harris and Waller Counties in Texas.  The three main cities in the WISD are Prairie View, Waller, and Hockley; Prairie View and Waller are incorporated and both hold city elections.  On May 10, 2008, Prairie View and Waller will hold city elections.  The WISD will hold its Board of Trustee elections on the same day.  In their third amended complaint, the plaintiffs allege that the WISD's May 10, 2008 Board of Trustee election plans "intentionally discriminate against African-American voters, particularly PVAMU students, because early voting has been vastly reduced in Prairie View, and election day will occur after PVAMU has dismissed for the semester."  (Docket Entry No. 31 at 7).

In the recent past, the WISD has held its school board election-day voting at Waller Junior High School in Waller.  Early voting was available by mail and in person at the WISD Administration Building in Waller.  (Docket Entry No. 32, Ex. A).  There were no polling places in either Prairie View or Hockley.  The Attorney General precleared this voting plan on August 30, 2000.  (*Id.*, Ex. A).

On July 23, 2007, the WISD Board of Trustees unanimously passed a resolution to designate polling places for future bond and trustee elections.  (Docket Entry No. 19, Ex. A). The resolution confirmed that the WISD Administration Building would remain a polling

place for early voting and that Waller Junior High School would remain a polling place for election-day voting.  The resolution added three new locations for both early voting and election-day voting for future bond and trustee elections: H.T. Jones Elementary in Prairie View, Texas; Roberts Road Elementary in Hockley, Texas; and Fields Store Elementary in Waller, Texas.  H.T. Jones Elementary is located on the PVAMU campus.  The early-voting polling places were only for the WISD school board elections.  A voter could not cast an early vote in another local election, such as the City of Prairie View council election, at the places set for early voting in the WISD election.

On August 4, 2007, the WISD Board of Trustees unanimously passed an amended resolution to designate polling places for future bond and trustee elections.  The amended resolution stated:

> Section 3. Future Voting Locations. The additional polling places for both early voting and voting on election day for future District bond and trustee elections, to the extent allowable by the Election Laws, shall be as follows:

> Waller County Community Center
> 21274 FM 1098 Loop West
> Prairie View, Texas 77446

> Roberts Road Elementary
> 24290 Zube Road
> Hockley, Texas 77447

> Fields Store Elementary
> 31670 Giboney Road
> Waller, Texas 77484

4

> provided that, the polling location in Prairie View, Texas shall
> be moved in to ensure that it is co-located with the early voting
> location and regular voting location designated by the Council
> of the City of Prairie View (the "City") for elections held by the
> City.

(*Id.*, Ex. B). The WISD asserts that it made the Waller County Community Center the Prairie View early-voting polling place—rather than H.T. Jones Elementary—at the request of the Prairie View mayor and at the instruction of the Department of Justice. (*Id.* at 3–4). Although the parties disagree about whether the Waller County Community Center is on or next to the PVAMU campus, it is undisputed that the Waller County Community Center, H.T. Jones Elementary, and the PVAMU Memorial Student Center, where the City of Prairie View holds its early voting for city elections, are within several hundred yards of each other.

On August 8, 2007, the Department of Justice sent a letter to the WISD preclearing the additional polling places:

> Dear Mr. Sage:
>
> This refers to the additional voting and polling place locations,
> and the permanent co-location of an early voting location and
> polling place location with the City of Prairie View when
> elections are held by the City, for the Waller Independent
> School District in Harris and Waller Counties, Texas, submitted
> to the Attorney General pursuant to Section 5 of the Voting
> Rights Act, 42 U.S.C. 1973c. We received your submission on
> July 24, 2007; supplemental information was received through
> August 7, 2007.
>
> Your August 7, 2007 correspondence withdraws the use of the
> H.T. Jones Elementary School from review, replacing it with the
> Waller County Community Center.   Accordingly,   no

5

> determination by the Attorney General regarding the use of the H.T. Jones Elementary School is required in this matter. . . .
>
> With regard to the remaining changes, the Attorney General does not interpose any objection to the specified changes. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes.  In addition, as authorized by Section 5, we reserve the right to reexamine this submission if additional information that would otherwise require an objection comes to our attention during the remainder of the sixty-day review period. . . .
>
> Sincerely,
>
> [signature]
>
> John Tanner
> Chief, Voting Section

(Docket Entry No. 32, Ex. B).

On January 15, 2008, the WISD Superintendent sent a letter to the Department of Justice, requesting preclearance of the Waller County Community Center, Roberts Road Elementary, and Fields Store Elementary as additional polling places for both early and election-day voting for the WISD election.  This letter did not condition the Prairie View early-voting polling place for the WISD election on "colocation" with the place that the City of Prairie View would select for early voting for the May 2008 mayor and council election. (Docket Entry No. 32, Ex. C).

On February 11, 2008, the WISD issued an Order of Election setting the WISD Board of Trustees election for May 10, 2008.  (Docket Entry No. 32, Ex. F, Attachment 1).

Election-day voting will be available at Waller Junior High School, the Waller County Community Center, Roberts Road Elementary, and Fields Store Elementary.  Early voting is available from April 28, 2008 to May 4, 2008 at the WISD Administration Building.  Early voting is also available on April 29, 2008 at the Waller County Community Center; on April 30, 2008 at Roberts Road Elementary; and on May 1, 2008 at Fields Store Elementary.  In addition, voters may use mail ballots for early voting.

On March 13, 2008, the City of Prairie View mayor issued a Notice of Election setting the City's mayor and council members elections for May 10, 2008.  (Docket Entry No. 32, Ex. F, Attachment 2).  Election-day voting will be available at the Waller County Community Center.  The City's election-day polling place is colocated with one of the election-day polling places for the WISD.  Early voting for the City of Prairie View election is available from April 28, 2008 to May 6, 2008, at the Prairie View City Hall.  Early voting is also available on April 29 and 30, 2008, at the PVAMU Memorial Student Center.  None of the places the City of Prairie View picked for its early voting is colocated with the previously selected WISD early-voting polling place in Prairie View.  Instead, the WISD early-voting polling place in Prairie View is at the Waller County Community Center; the City of Prairie View's early-voting polling places are the Prairie View City Hall and the PVAMU Memorial Student Center.  The Waller County Community Center is several hundred yards away from the PVAMU Memorial Student Center.  The WISD is providing one day of early voting for all WISD residents at each of its three early-voting polling places

7

in Prairie View, Waller, and Hockley, as well as a week of early voting for all WISD

residents at the WISD Administration Building.

The Department of Justice responded to Superintendent McReavy's January 15, 2008

letter on March 24, 2008.  As noted, the January 15, 2008 letter had requested preclearance

of the Waller County Community Center, Roberts Road Elementary, and Fields Store

Elementary as additional polling places for both early and election-day voting for the WISD

election.  (Docket Entry No. 32, Ex. C).  The response stated that "[w]ith respect to the

additional early voting and polling place locations, our analysis indicates that the submitted

changes received the requisite Section 5 preclearance on August 8, 2007" and that "no

further determination by the Attorney General is required or appropriate under Section 5."

(*Id.*, Ex. C).  The letter continued:

> In your March 19, 2008 telephone conversation with Tracey
> Shaffer, of our staff, you also indicated that the district no longer
> wishes to implement the permanent co-location of an early
> voting location with the City of Prairie View, which received
> Section 5 preclearance on August 8, 2007, and that this
> precleared change has not been implemented.  Because the
> district has never implemented the early voting co-location,
> there is no change from the prior law or practice.  Therefore, no
> determination by the Attorney General is required or appropriate
> concerning this matter.  We understand, however, that the
> district will implement the permanent co-location of an election-
> day polling place location within the city.

(*Id.*, Ex. C).

The plaintiffs acknowledge that the election-day polling places for the City of Prairie

View and the WISD elections are colocated; a Prairie View voter can vote in both elections

at the same location.  The plaintiffs protest the absence of an early-voting polling place in Prairie View that colocates the City of Prairie View and the WISD elections.  The plaintiffs also protest the fact that the May 10 election date falls right after the spring semester at PVAMU has ended.  The plaintiffs assert in their third amended complaint that the WISD "seeks to hold elections when most African-American voters will be out of town, and it wishes to renege on its legal obligation to expand early voting in Prairie View."  (Docket Entry No. 31 at 8).  The plaintiffs assert that the WISD "wishes to repudiate its own law, adopted on August 4, 2007, requiring the co-location of early voting with the City [of Prairie View]," and has failed to obtain the necessary preclearance from the Department of Justice for this change in the WISD's voting plan.  (*Id.* at 8).  The plaintiffs request a preliminary injunction preventing the WISD from holding its Board of Trustee elections when a majority of PVAMU students will be away from campus and ask this court to require the WISD to colocate an early-voting polling place for the May 10, 2008 trustee election with an early-voting place for the City of Prairie View's May 10, 2008 mayor and city council election. (*Id.* at 11–12).

In response, the WISD argues that the Department of Justice has precleared the WISD's voting plan for the May 10, 2008 Board of Trustee election and that the Department of Justice stated that no preclearance was necessary for the WISD's decision not to implement colocation of an early-voting polling place with the City of Prairie View.  The

WISD also argues that the date for the election is set by state law and is the same for the City of Prairie View.

## II.    The Legal Standards

### A.    The 12(b)(6) Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b) (6).  The Supreme Court recently clarified the standards that apply in a motion to dismiss for failure to state a claim.  In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007), the Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 127 S.Ct. at 1974; *see also Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007). Although material allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.

When a plaintiff's complaint is dismissed for failure to state a claim, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *Great Plains Trust Co. v. Morgan Stanley Dean*

10

*Witter & Co.*, 313 F.3d 305, 329 (5th Cir.2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see also Great Plains Trust Co.*, 313 F.3d at 329; *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1996).

### B.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim.  *Celotex*, 477 U.S. at 330.  The party moving for

11

summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp*., 155 Fed. Appx. 798, 800 (5th Cir. 2005).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800. "Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Beard v. Banks*, 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex*, 477 U.S. at 322).

### C.    The Preliminary Injunction Standard

To obtain a preliminary injunction, the applicant must show: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm to the other; and (4) that granting the preliminary injunction will not disserve the public interest.  *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir.2005) (citing *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir.2003)).  A preliminary injunction "is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion' on all four requirements."  *Id.* (internal quotations and citations omitted).

## III.    The Section 5 Claims

The plaintiffs assert that the WISD did not obtain the necessary preclearance under section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, for its voting plan for the May 10, 2008 election.  The plaintiffs ask this court to "[t]emporarily and permanently enjoin Waller ISD from conducting early voting for the May 10, 2008 election in Prairie View at times and

locations other than those chosen by the City of Prairie View."  (Docket Entry No. 31 at 11–12).[1]

## A.    Section 5 of the Voting Rights Act

Under section 5 of the Voting Rights Act, a covered jurisdiction like the WISD that proposes to change a voting "qualification, prerequisite, standard, practice, or procedure" must either seek administrative preclearance through the Attorney General of the United States or seek judicial preclearance by instituting an action in the United States District Court for the District of Columbia for a declaratory judgment that the voting change comports with section 5.  42 U.S.C. § 1973c.  Section 5 "has a limited substantive goal: to insure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise." *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (quoting *Miller v. Johnson*, 515 U.S. 900, 926 (1995)) (internal quotation marks omitted).  As long as a voting change has no retrogressive effect, it is entitled to section 5 preclearance.  *See id.* ("[N]o matter how unconstitutional it may be, a plan that is not retrogressive should be precleared under § 5.  Preclearance under § 5 affirms nothing but the absence of backsliding." (quoting *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 335–36 (2000) (internal quotation marks omitted))).

_____

[1]The WISD has moved under Rule 12(b)(6) to dismiss the plaintiffs' section 5 claim.  Both parties have submitted matters outside the pleadings.  The WISD's motion is addressed as one for summary judgment.  FED. R. CIV. PRO. 56.

Once a State has successfully complied with the section 5 approval requirements, "private parties may enjoin the enforcement of the new enactment only in traditional suits attacking its constitutionality; there is no further remedy provided by § 5." *Morris v. Gressette*, 432 U.S. 491, 503 (1977) (quoting *Allen v. State Bd. of Elections*, 393 U.S. 544, 549–50 (1969). Acknowledging the "potential severity of the § 5 remedy" and Congress's intent to "provide covered jurisdictions with an expeditious alternative to declaratory judgment actions," the Supreme Court has found that "judicial review of the Attorney General's actions" in declining to object to a proposed change "is necessarily precluded." *Id.* at 504–05. In *Morris v. Gressette*, the Supreme Court noted:

> The congressional intent is plain: The extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete submission. Although there was to be no bar to subsequent constitutional challenges to the implemented legislation, there also was to be 'no dragging out' of the extraordinary federal remedy beyond the period specified in the statute.

*Id.* at 504 (quoting *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 305 (1943). In light of Congress's desire "to provide a speedy alternative method of compliance to covered States," the *Morris* Court held that "[w]here the discriminatory character of an enactment is not detected upon review by the Attorney General, it can be challenged in traditional constitutional litigation. But it cannot be questioned in a suit seeking judicial

review of the Attorney General's exercise of discretion under § 5, or his failure to object

within the statutory period." *Id.* at 507.

**B.     Did the WISD Obtain the Necessary Section 5 Preclearance for the May 10, 2008 Election?**

The plaintiffs assert that the WISD failed to obtain preclearance for two changes in

the WISD's voting plan: first, that the WISD "no longer intended to co-locate early voting

with the City of Prairie View"; and second, that the WISD "was purporting to make election

changes through [Superintendent] McReavy rather than the elected school board."  (Docket

Entry No. 41 at 5–6).  Each contention is addressed below.

> *1.     The WISD's Alleged Failure to Inform the Department of Justice that There Would be no Colocation of the Prairie View Early-Voting Polling Place for the WISD Election with the City of Prairie View's Early-Voting Polling Places for the City's Election*

The plaintiffs argue that the WISD's decision not to colocate its Prairie View early-

voting polling place with the City's early-voting polling place for City elections constitutes

a change in the WISD's voting plan that the Attorney General did not preclear under section

5.  The plaintiffs assert that in its March 24, 2008 letter, "the Department [of Justice] did not

accept or reject the change[;] it simply stated that 'no determination by the Attorney General

is required or appropriate concerning this matter."  (Docket Entry No. 41 at 6).  The WISD

responds that in the March 24, 2008 letter, the Department of Justice did preclear the decision

not to have the Prairie View early-voting polling place for the WISD election colocated with

an early-voting polling place for the City of Prairie View's election.  (Docket Entry No. 32 at 14).

The record shows that the WISD's voting plan for the May 10, 2008 election received the necessary preclearance from the Department of Justice.  The March 24, 2008 letter from the Department of Justice makes clear that the "Attorney General does not interpose any objection" to the WISD's plan to provide early and election-day voting at the Waller County Community Center in Prairie View, Roberts Road Elementary in Hockley, and Fields Store Elementary in Waller, without colocating the Prairie View early-voting polling place with the polling places designated by the City of Prairie View for early voting in the City election. (Docket Entry No. 32, Ex. C).  The March 24, 2008 letter acknowledged that the WISD did not intend to colocate the Prairie View early-voting polling place, noted that this decision did not represent a "change from the prior law or practice," and stated that "no determination by the Attorney General is required or appropriate concerning this matter."  (*Id.*, Ex. C).  The letter also stated that the "additional early voting and polling place locations . . . received the requisite Section 5 preclearance on August 8, 2007" and that the "Attorney General does not interpose any objection" to those locations.  (*Id.*, Ex. C).  The letter makes it clear that the Department of Justice was informed of the WISD's decision not to colocate its Prairie View early-voting polling place for the WISD May 10 election with the City of Prairie View's early-voting polling places for the City's May 10 elections.  The Attorney General had no objection to the WISD's voting plan to provide three additional early and election-day voting

polling places, without colocation of the Prairie View early-voting polling place with the City of Prairie View's early-voting polling places for its City election.  The plaintiffs' first basis for claiming that the Department of Justice failed effectively to preclear the May 10 WISD voting plan fails.

       2.     *The WISD's Alleged Failure to Inform the Department of Justice That Election Changes Were Being Made by the Superintendent, Not the Board*

The plaintiffs assert that when Superintendent McReavy wrote to the Department of Justice on January 15, 2008, seeking preclearance of three additional polling places for both early and election-day voting, he failed to inform the Department that the WISD "was purporting to make election changes through Mr. McReavy rather than the elected school board."  (*Id.* at 5–6).  The plaintiffs rely on *Clark v. Roemer*, 500 U.S. 646 (1991), for the proposition that "[a] request for preclearance of certain identified changes in election practices which fails to identify other practices as new ones cannot be considered an adequate submission of the latter practices."  (*Id.* at 6).  The plaintiffs emphasize that "allowing the unelected superintendent to unilaterally rescind an election ordinance adopted by the elected school board" constitutes a "change in the process for adopting election changes," which is itself "a change that requires preclearance" under 28 C.F.R. §§ 51.12, 51.14, 51.16.  The plaintiffs argue that because the WISD "failed to meet its burden of identifying all changes to DOJ with specificity," the WISD's voting plan to hold early and election-day voting at

18

three additional locations "must fail because the procedure for adopting it was not submitted or precleared."  (*Id.* at 9).

On August 4, 2007, the WISD Board of Trustees unanimously passed an amended resolution to designate polling places for future bond and trustee elections.  (Docket Entry No. 32, Ex. B).  The resolution designated the Waller County Community Center, Roberts Road Elementary, and Fields Store Elementary as additional polling places for early and election-day voting, "provided that, the polling location in Prairie View, Texas shall be moved in to ensure that it is co-located with the early voting location and regular voting location designated by the Council of the City of Prairie View (the 'City') for elections held by the City."  (*Id.*, Ex. B).  Citing *St. Louis Sw. R.R. Co. v. Naples Indep. Sch. Dist.*, 30 S.W.2d 703, 705 (Tex. App.—Texarkana 1930, no writ), the plaintiffs characterize this amended resolution as a "local law" or "ordinance" that remains in effect because the WISD Board of Trustee's February 11, 2008 Order of Election "said nothing about repudiating co-located early voting."  (Docket Entry No. 41 at 7).  The plaintiffs assert that the WISD Board of Trustees "never made any attempt to rescind the August 4, 2007 resolution," which "would have required public notice and a public meeting."  (*Id.* at 7)  The plaintiffs contend that Superintendent McReavy, an unelected official, acted "unilaterally" to "rescind an election ordinance adopted by the elected school board" when he received a phone call from the Department of Justice and informed the Department that the WISD sought preclearance for three new polling places without colocating the Prairie View early-voting polling place

19

with the City's early-voting polling place for city elections. (*Id.* at 6). The plaintiffs contend that because Superintendent McReavy failed to inform the Department of Justice of this change in the procedure for making changes to the voting plan, such a change was not effectively precleared.

The WISD responds that "[t]here is no statute or case law requiring a school board to act only by ordinance or resolution with respect to voting locations or the calling of an election." (Docket Entry No. 32 at 18). The WISD argues that the Board of Trustees validly approved an Order of Election setting the date and polling locations of the May 10, 2008 trustee election, and that this act "impliedly repealed the prior enactment (the August 4 resolution)." (*Id.* at 20 n.9). The WISD further contends that Superintendent McReavy "was acting as the chief executive officer of the District and the agent of the school board to implement its unanimously adopted Order of Election" when he informed the Department of Justice on March 19, 2008 that the WISD would not colocate its early-voting polling place with the City of Prairie View's. (*Id.* at 20). The WISD also distinguishes *Naples* on the ground that it examines only the validity of a school board's action in levying *ad valorem* taxes by resolution when a state law required the board to levy such taxes by ordinance.

The plaintiffs' reliance on *Naples* is misplaced. 30 S.W.2d 703. The *Naples* court did not hold that a resolution by a school board is an "ordinance" or "local law" that can only be rescinded after public notice and a public meeting. Rather, the *Naples* court examined the specific form of a school board's resolution levying *ad valorem* taxes. The *Naples* court

20

concluded that the resolution was sufficiently "invested . . . with the formalities, solemnities and characteristics of an ordinance" to make the levy valid under a statute requiring *ad valorem* taxes to be levied "by ordinance." *Id.* at 705 (quoting *Vance v. Town of Pleasanton*, 261 S.W. 457, 458 (Tex. Civ. App.—San Antonio 1924)). In doing so, the court applied the definition of "'ordinance' within the meaning of the statute." *Id.* (quoting *Vance*, 261 S.W. at 458). Under this definition, an ordinance "must be more than a mere verbal motion made, adopted, and entered on the minutes, more than a mere resolution subsequently reduced to writing by the secretary"; an ordinance "must be reduced to writing before being acted on by the council" and "must be invested . . . with the formalities, solemnities, and characteristics of an ordinance, as distinguished from motions and simple resolutions." *Vance*, 261 S.W. at 458. The plaintiffs cite no other cases to support their argument that the WISD Board's August 4, 2007 resolution is an "ordinance" that can only be changed after public notice and a public meeting.

Nor do the plaintiffs cite cases or point to evidence showing that the WISD Board's actions in its February 11, 2008 meeting or the resulting Order of Election did not constitute valid Board acts. The February 11, 2008 Order of Election schedules an election for May 10, 2008, with election-day voting at Waller Junior High, Waller County Community Center, Roberts Road Elementary, and Fields Store Elementary. Under the February 11 Order of Election, early voting is available for one day each at the Waller County Community Center, Roberts Road Elementary, and Fields Store Elementary. In contrast to the Board's August

21

4, 2007 resolution, the February 11, 2008 Order of Election does not require colocation of the Prairie View early-voting polling place for the WISD election with the City of Prairie View's early-voting polling place for the City election.  (Docket Entry No. 32, Ex. F, Attachment 1).  The minutes of the February 11, 2008 Board meeting state that the Board President "read the Order and then called for a motion to approve the Call of the Waller ISD Trustee Election."  (*Id.*, Ex. F, Attachment 1).  All the trustees were present and the motion carried unanimously.

Texas courts have found that "[w]hen all members of a board are present and participate in a meeting, they may take official action."  *Dist. Trustees of Campbellton Consol. Common Sch. Dist. No. 16 v. Pleasanton Indep. Sch. Dist.*, 362 S.W.2d 122, 126 (Tex. Civ. App.—San Antonio 1962, writ refused n.r.e); *see also Hext v. Cent. Educ. Agency*, 909 S.W.2d 252, 254 (Tex. App.—Austin 1995, no pet.) (holding that if "a governing body's minutes reflect affirmatively that it took an action," then "the minutes are indeed conclusive" on the issue (citing *Crabb v. Uvalde Paving Co.*, 23 S.W.2d 300, 302 (Tex. Comm'n App. 1930, holding approved)).  The record shows that on February 11, 2008, the WISD Board validly called for a May 10, 2008 election with an early-voting plan that did not colocate a Prairie View early-voting polling place with the City of Prairie View's early-voting polling places in its City election.

The record shows that in requesting preclearance of the WISD's three additional early-voting polling places without colocation, and in confirming this voting plan with the

Department of Justice when the Department called him on March 19, 2008, Superintendent McReavy did not engage in a "unilateral act" that "was a change in the process for adopting election changes" that itself required section 5 preclearance.  (Docket Entry No. 41 at 7). Contrary to the plaintiffs' argument that Superintendent McReavy unilaterally "rescind[ed] an ordinance," (*Id.* at 11), the record shows that Superintendent McReavy's actions were consistent with the WISD Board's February 11, 2008 meeting minutes and Order of Election, which schedule the May 10, 2008 election and designate three additional early-voting polling places without conditioning the Prairie View early-voting polling place on colocation with the City's early-voting polling place for its election.  When Superintendent McReavy received the phone call from the Department of Justice on March 19, 2008 and expressed the WISD's intent not to colocate its Prairie View early-voting polling place for the school board election with the City's early-voting polling place for the City's election, this confirmation was consistent with the February 11, 2008 Order of Election, which did not condition the Prairie View early-voting polling place on colocation.  Superintendent McReavy's role did not constitute a "change in the process for adopting election changes" that itself required section 5 preclearance.

Because the Attorney General has precleared the WISD's voting plan to hold early voting at three additional polling places without colocation, and because Superintendent McReavy did not create a "change in the process for adopting election changes" that required section 5 preclearance, the plaintiffs have no claim for relief under section 5.  Because the

WISD received the necessary section 5 approval for this voting plan, the plaintiffs have no further remedy under section 5.  *See Morris*, 432 U.S. at 503.  The plaintiffs may challenge the constitutionality of the WISD's voting plan "in traditional constitutional litigation," but they cannot seek "judicial review of the Attorney General's exercise of discretion under § 5, or his failure to object within the statutory period." *Id.* at 507.  The plaintiffs ask this court "to convene a three-judge panel as required by 42 U.S.C. § 1973c."  (Docket Entry No. 31 at 8).  The plaintiffs seek a declaration that "changes to pre-cleared but yet-unimplemented election laws may not take effect until the subsequent changes are independently precleared." (*Id.* at 9).  Because the plaintiffs may not challenge the WISD's decision not to colocate or seek judicial review of the Attorney General's exercise of discretion under section 5, such relief is not available to the plaintiffs.

The plaintiffs' request for a preliminary injunction requiring the WISD to colocate its early-voting polling place for the May 10, 2008 trustee election with the Prairie View early-voting polling place under section 5 is denied.  The WISD's motion for summary judgment on the plaintiffs' section 5 claims is granted.

## IV.    The Section 2 Claims

The plaintiffs assert that the WISD's voting plan for the May 10, 2008 election violates section 2 of the Voting Rights Act, 42 U.S.C. § 1973, because the plan provides for electing trustees at-large instead of from single-member districts; election day is after PVAMU ends its spring-semester classes; and the plan does not colocate the Prairie View

early-voting polling place for the WISD elections with the City's early-voting polling place

for City elections.  The defendants have moved to dismiss the plaintiffs' claims under Rule

12(b)(6).

### A.     Section 2 of the Voting Rights Act

Section 2 of the Voting Rights Act, as amended, provides as follows:

> (a) No voting qualification or prerequisite to voting or standard,
> practice, or procedure shall be imposed or applied by any State
> or political subdivision in a manner which results in a denial or
> abridgement of the right of any citizen of the United States to
> vote on account of race or color . . .

> (b) A violation of subsection (a) of this section is established if,
> based on the totality of circumstances, it is shown that the
> political processes leading to nomination or election in the State
> or political subdivision are not equally open to participation by
> members of a class of citizens . . . in that its members have less
> opportunity than other members of the electorate to participate
> in the political process and to elect representatives of their
> choice. The extent to which members of a protected class have
> been elected to office in the State or political subdivision is one
> circumstance which may be considered: *Provided*, That nothing
> in this section establishes a right to have members of a protected
> class elected in numbers equal to their proportion in the
> population.

42 U.S.C. §1973.

"The essence of a § 2 claim is that a certain electoral law, practice, or structure

interacts with social and historical conditions to cause an inequality in the opportunities

enjoyed by black and white voters to elect their preferred representatives." *Thornburg v.*

*Gingles*, 478 U.S. 30, 47 (1986).  Plaintiffs challenging a voting plan under section 2 must

meet the conditions the Supreme Court identified in *Gingles*.  *See Sensley v. Albritton*, 385

F.3d 591, 595 (5th Cir. 2004); *Rodriguez v. Bexar County*, 385 F.3d 853, 859 (5th Cir. 2004).

The plaintiffs bear the burden to show, by a preponderance of the evidence, that: (1) the

affected minority group is sufficiently large and geographically compact to constitute a

voting age majority in a district; (2) the minority group is politically cohesive; and (3) the

majority votes sufficiently as a bloc that it is able—in the absence of special

circumstances—usually to defeat the minority group's preferred candidate.  *Rodriguez*, 385

F.3d at 859–60 (citing *NAACP v. Fordice*, 252 F.3d 361, 365 (5th Cir. 2001)).

   If the *Gingles* three-part threshold showing is met, the plaintiffs must show that under

the "totality of the circumstances," they do not possess the same opportunities to participate

in the political process and elect representatives of their choice enjoyed by other voters.  *See*

*Fordice*, 252 F.3d at 365–66; *Rollins v. Fort Bend Independent School District*, 89 F.3d 1205

(5th Cir.1996); *LULAC v. Clements*, 999 F.2d 831, 849 (5th Cir.1993) (en banc), *cert.*

*denied*, 510 U.S. 1071 (1994). To make this determination, a court must conduct a "searching

practical evaluation" of the factors set forth in *Zimmer v. McKeithen*, 485 F.2d 1297 (5th

Cir.1973) (en banc), *aff'd sub nom. East Carroll Parish School Board v. Marshall*, 424 U.S.

636 (1976), and in the Senate Report of the 1982 Amendments to the Act.  *See Fordice*, 252

F.3d at 366–67; *Magnolia Bar Ass'n v. Lee*, 994 F.2d 1143, 1146–47 (5th Cir. 1993).  These

factors include:

>    1. the extent of any history of official discrimination in the state
>    or political subdivision that touched the right of the members of

the minority group to register, to vote, or otherwise to participate in the democratic process;

2. the extent to which voting in the elections of the state or political subdivision is racially polarized;

3. the extent to which the state or political subdivision has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against the minority group;

4. if there is a candidate slating process, whether the members of the minority group have been denied access to that process;

5. the extent to which members of the minority group in the state or political subdivision bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process;

6. whether political campaigns have been characterized by overt or subtle racial appeals; and

7. the extent to which members of the minority group have been elected to public office in the jurisdiction.

8. whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of the members of the minority group; and

9. whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice, or procedure is tenuous.

See *Fordice*, 252 F.3d at 366–67.  The Supreme Court emphasized in *Gingles* that a proper assessment of vote dilution claims is "peculiarly dependent upon the facts of each case" and requires "an intensely local appraisal of the design and impact of the contested electoral mechanisms."  478 U.S. at 79 (citations omitted).  The Fifth Circuit has repeatedly

emphasized that there is a "special need for detailed findings of fact in vote dilution cases," in which the district court performs a "searching practical evaluation of 'past and present reality' [based] on a functional view of the political process." *Westwego Citizens for Better Govt. v. Westwego*, 872 F.2d 1201, 1203-04 (5th Cir.1989) (internal punctuation omitted); *Overton v. City of Austin*, 871 F.2d 529, 531 (5th Cir.1989); *see also Rodriguez*, 385 F.3d at 860.

**B.     Does the WISD Voting Plan for the May 10, 2008 Election Violate Section 2 of the Voting Rights Act?**

*1.     The At-Large Election of Board Trustees*

The plaintiffs do not request a preliminary injunction preventing the WISD from holding its May 10, 2008 election based on their claim that the WISD's at-large system for school board elections violates section 2 of the Voting Rights Act.  In addition, the plaintiffs do not submit evidence showing that the WISD's at-large election system gives African-American voters "an unequal opportunity to participate in the political processes and to elect candidates of their choice." *Gingles*, 478 U.S. at 44–45.  The WISD does not address the plaintiffs' claim that the WISD's at-large election system violates section 2 of the Voting Rights Act.  This court will not address the plaintiffs' request for an order requiring the WISD to elect its school board members from single-member districts at this time.

*2.     The May 10, 2008 Election Date*

The plaintiffs seek a permanent injunction to prevent the WISD "from holding elections when a majority of PVAMU students are scheduled to be away from campus." (Docket Entry No. 31 at 11).  The plaintiffs do not seek to enjoin the May 10 election on the basis that it is scheduled after the spring semester has ended.

To support their claim that the election date violates section 2 of the Voting Rights Act, the plaintiffs argue that the WISD's "discriminatory motives" are apparent in a campaign e-mail sent by a WISD Trustee running for reelection in the 2008 election.  The e-mail includes a statement that the Trustee is running for reelection against a PVAMU student and that "we will lose control of our board in a couple short years and you will have the students of Prairie View controlling your children's future and the property taxes where you live." (*Id.*, Ex. A).  In the e-mail, the Trustee points out that his opponent "has said that if elected she was moving back to St. Louis (where she is from) after she graduates because she hates Texas and Waller County." (Docket Entry No. 41, Ex. A).  The Trustee asks for residents and taxpayers to vote for him so that the school district will not be "run by students who don't pay taxes and don't have any ties to the community." (*Id.*, Ex. A).  The WISD argues that the Trustee only offers "criticisms of an opponent who is a college student who has purportedly expressed animosity to the community." (Docket Entry No. 42 at 9).

In response, the WISD emphasizes that its May 10, 2008 election is scheduled pursuant to State law requiring "each general or special election in this state" to be held on "the second Saturday in May" or "the first Tuesday after the first Monday in November."

TEX. ELEC. CODE § 41.001(a).  The WISD also points out that early voting is available by absentee ballot and in person at the Waller County Community Center and the WISD Administration Building while PVAMU is in session.

As noted, the plaintiffs have not sought a preliminary injunction preventing the WISD from holding its May 10, 2008 election because PVAMU will have completed its spring semester before that date.  Nor have the plaintiffs submitted evidence showing a substantial likelihood that they will prevail on the merits of their claim that the WISD's election date violates section 2 of the Voting Rights Act or that if the May 10, 2008 election is held as scheduled, they will suffer irreparable injury that will outweigh the harm the WISD will suffer if it cannot hold its May 2008 trustee election.

### 3.   Colocation of the Prairie View Early Voting Polling Place

The plaintiffs do request a preliminary injunction requiring the WISD to colocate its early-voting polling place in Prairie View with the City's early-voting polling places for the City elections.  To support their claim that the WISD's refusal to colocate early voting violates section 2 of the Voting Rights Act, the plaintiffs offer the allegedly discriminatory campaign e-mail sent by a WISD Trustee running for reelection in the 2008 election.  The plaintiffs have not made the showing necessary for the preliminary injunction they seek.  There is no evidence of the *Gingles* three-part showing.  Nor is there evidence showing that under the "totality of the circumstances" the WISD has failed to provide the plaintiffs the same opportunities to participate in the political process and elect representatives of their

choice that other voters enjoy by providing one day of early voting at the Waller County Community Center instead of two days of early voting at the PVAMU Memorial Student Center.  *See Fordice*, 252 F.3d at 366.

The WISD provides one day of early voting for all WISD residents at each of its three early-voting polling places in Prairie View, Waller, and Hockley, as well as a week of early voting for all WISD residents at the WISD Administration Building.  The plaintiffs have not shown that the early-voting opportunities available to African-American voters in the WISD are unequal to the early-voting opportunities available to other voters.  The plaintiffs have not made the necessary showing of a substantial likelihood of success on the merits of their claim for a preliminary injunction.

## V.    Conclusion

The plaintiffs' request for a preliminary injunction changing the WISD early-voting polling places for the May 10, 2008 election is denied.  The WISD's motion for summary judgment on the plaintiffs' claims under section 5 of the Voting Rights Act is granted.  The WISD's motion to dismiss the plaintiffs' claims that the WISD's voting plan for the May 10, 2008 election violates section 2 of the Voting Rights Act by scheduling the election date in compliance with Texas state law is granted.

SIGNED on April 27, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

31