## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE JACKSON, individually and | § | |
| as next friend of CHEIKH JACKSON | § | |
| and OKOFO JACKSON, and | § | |
| DEWAYNE CHARLESTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-3086 |
| | § | |
| WALLER INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

This case involves taxpayer challenges to the validity of school bonds approved by voters in a May 12, 2007 election in the Waller Independent School District ("WISD"). On March 24, 2008, this court dismissed the plaintiffs' challenges to the validity of the bonds and denied the application for a preliminary injunction prohibiting their issuance. The plaintiffs now move this court to amend and alter the March 24, 2008 Memorandum and Order under Rule 59 of the Federal Rules of Civil Procedure. (Docket Entry No. 23). The WISD has responded, (Docket Entry No. 34), and the plaintiffs have replied, (Docket Entry No. 38).

Based on the motion, the response, and the reply; the record; and the applicable law, this court denies the plaintiffs' motion to alter and amend but clarifies the limits of the prior

ruling.  The plaintiffs may not litigate in this suit their claims that the 2007 bond election was invalid and illegal; that the bonds themselves are invalid and illegal; and that the proposed expenditure of money relating to the bonds is invalid and illegal.  These claims could have been raised in the state-court bond-validation declaratory judgment proceeding.  The judgment in the bond-validation proceeding does not, however, limit the plaintiffs' ability to litigate in this federal-court case their claims that the WISD violates federal equal protection and other rights, including under 20 U.S.C. § 1706, because the district provides "unequal educational opportunities for minority students in and around the City of Prairie View," provides "unequal distribution of bond funds to Jones Elementary," and because "facilities in Prairie View are inferior to those found elsewhere in the district."  (Docket Entry No. 1 at 4–6).  And the state-court bond-validation proceeding judgment does not limit the plaintiffs' pursuit of the claims they raised in the third amended complaint in this suit, challenging the constitutionality and legality of at-large voting for school board trustees and other aspects of school board elections and governance.

The reasons for these rulings are set out below.

## I.    Background

The facts of this case were detailed in the March 24, 2008 Memorandum and Order and are only summarized here.  On March 11, 2007, the WISD Board of Trustees unanimously approved a $49.29 million facilities improvement bond plan to present to voters.  A special election on the bond proposal was held on May 12, 2007.  Voters approved

the bonds, 770 in favor to 446 against.  On August 9, 2007, DeWayne Charleston sued the WISD in state court in Harris County, Texas, alleging that the WISD did not provide sufficient notice of the meetings about the bonds as required under the Texas Open Meetings Act, TEX. GOV'T CODE ANN. § 551.001 *et seq.*  (Docket Entry No. 7, Ex. K).  Charleston sought a declaratory judgment that the May 12, 2007 bond election and the bonds were invalid.  He also sought an injunction preventing the WISD from holding any meetings in violation of the Open Meetings Act.

On August 20, 2007, the WISD filed a bond-validation suit in state court in Waller County, Texas under the Texas Expedited Declaratory Judgment Act ("EDJA"), TEX. GOV'T CODE § 1205.001, *et seq.*  The EDJA provides as follows:

> An issuer may bring an action under this chapter to obtain a declaratory judgment as to:
>
> > (1) the authority of the issuer to issue the public securities;
> >
> > (2) the legality and validity of each public security authorization relating to the public securities, including if appropriate:
> >
> > > (A) the election at which the public securities were authorized;
> > >
> > > (B) the organization or boundaries of the issuer;
> > >
> > > (C) the imposition of an assessment, a tax, or a tax lien;

(D) the execution or proposed execution of a contract;

(E) the imposition of a rate, fee, charge, or toll or the enforcement of a remedy relating to the imposition of that rate, fee, charge, or toll; and

(F) the pledge or encumbrance of a tax, revenue, receipts, or property to secure the public securities;

(3) the legality and validity of each expenditure or proposed expenditure of money relating to the public securities; and

(4) the legality and validity of the public securities.

TEX. GOV'T CODE § 1205.021.  The statute also provides that a final judgment that "each public security authorization and expenditure of money relating to the public securities was legal" is "binding and conclusive" as to "each adjudicated matter and each matter that could have been raised."  TEX. GOV'T CODE § 1205.151(a)-(b).  The WISD sought a declaratory judgment that the bond election and bonds were valid.

On August 21, 2007, the Harris County court held a hearing on Charleston's request for a TRO prohibiting the WISD from holding meetings in violation of the Open Meetings Act.  That court denied the TRO.

On August 29, 2007, the Waller County court issued a notice under the EDJA provision informing residents and property holders in the WISD of a hearing and trial date

4

in the WISD's declaratory judgment suit. The date was set for September 24, 2007. (Docket Entry No. 7, Ex. M). The court's clerk published the notice in newspapers of general circulation in Waller County, Harris County, and Travis County as required under section 1205.043 of the EDJA. (*Id.*, Exs. N, O).

On September 24, 2007, Charleston and Jackson filed this suit in federal court. They alleged that the WISD provided "unequal educational opportunities for minority students in and around the City of Prairie View" and claimed damages under 20 U.S.C. § 1706 "for the unequal distribution of bond funds to Jones Elementary." (Docket Entry No. 1 at 4–5). They also alleged that the bond election violated the Voting Rights Act, 42 U.S.C. § 1973, because the election limited and deterred participation by African-American voters. They alleged that they were denied due process under 42 U.S.C. § 1983 "insofar as they were not provided actual notice" of the Waller County bond-validation proceeding. (*Id.* at 5). They further alleged that they "have been denied the equal protection of the laws insofar as facilities in Prairie View are inferior to those found elsewhere in the district." (*Id.* at 6).

On the same day, Charleston filed an answer in intervention in the Waller County court bond-validation proceeding that the WISD filed under the EDJA. Charleston appeared at the Waller County court hearing scheduled for that date. (Docket Entry No. 7, Ex. Q). In the answer in intervention, Charleston moved to dismiss the WISD's claim for lack of jurisdiction and moved the Waller County court to abate the state-court proceeding in favor of his just-filed federal-court suit. Charleston recognized that the state and federal

proceedings significantly overlapped and that in the federal case, he sought to invalidate precisely what the WISD sought to validate in the state EDJA proceeding.  Charleston supported his abatement motion by arguing this close relationship, noting that while the WISD "asks this [state] Court to declare that selling its bonds and expending their proceeds is lawful . . . the federal suit asserts that such expenditures violate federal law." (*Id.*, Ex. Q at 4).  The Waller County court denied the motions to dismiss and to abate the state-court case.  While asking for bond invalidation, Charleston did not, however, include in his state-court pleadings any allegations that the bonds were racially discriminatory.

At the Waller County court hearing, Charleston's counsel cross-examined the WISD Board president about the allegedly discriminatory allocation of the bond proceeds. Charleston's counsel asked the president about the voter-approved proposal to spend $17 million of the bond proceeds on a football stadium, given that the WISD is "considered to be poor."  (Docket Entry No. 7, Ex. B at 47–51).  Counsel for the WISD objected on the ground that Charleston's state-court pleading did not raise any claim that the voter-approved proposed spending of the bond proceeds was racially discriminatory.  (*Id.*, Ex. B at 47). Charleston's counsel responded that although the plaintiffs were "not consenting to try the federal case here [in state court] or try the issues of the federal case here," he recognized that a bond-validation suit under the EDJA may encompass "any potential cause of action that could relate to the legality or validity of this bond," making evidence as to the allocation of

the bond proceeds "absolutely relevant" and "contained in the statute." (*Id.*, Ex. B at 48).
The state-court judge sustained the objection.

Charleston continued cross-examining the WISD Board president on the allegedly
discriminatory allocation of the bond proceeds. Charleston asked if the president considered
Jones Elementary, the WISD elementary school that serves the predominantly African-
American city of Prairie View, to be "beautiful" or "dilapidated." (*Id.*, Ex. B at 48–50). The
president admitted that "he probably wouldn't use that word, beautiful," to describe the
campus, but also stated that he "wouldn't use ['dilapidated'] either." (*Id.*, Ex. B at 48). The
state-court judge did not strike the testimony. Counsel for the WISD pointed out, and
Charleston's counsel did not dispute, that Charleston "very carefully made a big point of the
fact that he's not bringing [any equal-protection or other federal-law claims] in this case."
(*Id.*, Ex. B at 50). The objection was based on the lack of any pleadings asserting equal
protection violations. The Waller County judge stressed his role as "a protector of our
efficiency here" and questioned whether it was in his "purview in this lawsuit to review the
decisions made by the school district about how the bond issue funds would be utilized."
(*Id.*, Ex. B at 50). The judge expressed concern over substituting his judgment "about
matters that are within the peculiar knowledge of the people who administer a school district
to overturn the decisions they've made." (*Id.*, Ex. B at 51). The judge asked Charleston's
counsel to proceed with another question for the witness.

On October 2, 2007, the Waller County court issued a judgment upholding the validity of the meeting notices, the bond election, and the bonds under the EDJA. (Docket Entry No. 7, Ex. R). The court also set a security bond under section 1205.101 of the EDJA, which allows a bond issuer to move to dismiss any opposing party or intervenor other than the attorney general unless that party posts a bond with sufficient security to compensate the bond issuer for any delays caused by the party's continued participation. Charleston appealed both the state-court judgment and the security bond amount set by the state court.

On December 21, 2007, the appellate court held that it lacked jurisdiction to consider Charleston's appeal because he had failed to post the necessary bond. *Charleston v. Waller Indep. Sch. Dist.*, --- S.W.3d ----, 2007 WL 4465451, at *7 (Tex. App.—Houston [1st Dist.] Dec. 21, 2007, no pet.). Charleston petitioned the Texas Supreme Court for a writ of mandamus. On December 24, 2007, the plaintiffs served the WISD in this lawsuit. On March 14, 2008, the Texas Supreme Court denied Charleston's petition for writ of mandamus.

The parties sought and obtained expedited action in this federal court. On March 24, 2008, this court held that the plaintiff's claims challenging the validity of the May 12, 2007 bond election and bonds were barred by claim preclusion. The plaintiffs now move to amend this court's March 24, 2008 memorandum and order under Rule 59. The plaintiffs argue that their federal-law claims challenging the bond election and bonds are not precluded because the state court did not allow them to present their federal-law claims during the bond-

8

validation declaratory judgment proceeding.   The plaintiffs also contend that the *Rooker–Feldman* doctrine does not bar their claims because they "never asked this Court to review the decision of the state court."  (Docket Entry No. 23 at 6).  Citing *Donovan v. City of Dallas*, 377 U.S. 408, 412–13 (1964), the plaintiffs argue that they have a "right granted by Congress" to bring their claims in federal court.

## II.    The Legal Standard

Rule 59 of the Federal Rules of Civil Procedure provides that a "new trial may be granted . . . in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Beckham v. La. Dock Co., L.L.C.*, 124 Fed. Appx. 268, at *2 (5th Cir.2005) (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir.1985)).  A motion for a new trial should be granted only when "the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 838–39 (5th Cir.2004).

A motion to alter or amend a judgment under Rule 59(e) "calls into question the correctness of a judgment," *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir.2002), and "must clearly establish either a manifest error of law or fact or must present newly discovered evidence," *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir.

2003).  A Rule 59(e) motion "cannot be used to raise arguments which could, and should, have been made before the judgment issued."  *Id.* (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir.2003)).

## III.   The Parties' Contentions

The plaintiffs argue that claim preclusion does not apply because "the state court did not hear and, in fact, *refused to hear* Plaintiff Charleston's civil rights claims."  (Docket Entry No. 23 at 1).  Because the Waller County court "restricted the trial to matters of state procedural law, and *Waller ISD objected to discussion of any issues beyond that scope*," the plaintiffs argue that the Waller County court's decision "cannot possibly be *res judicata* with respect to the Plaintiffs' federal claims."  (*Id.* at 4).  Noting that under Texas law, *res judicata* requires "a prior final judgment *on the merits* by a court of competent jurisdiction," the plaintiffs argue that "there was no judgment on the merits, as the state court refused to hear evidence pertaining to the federal claims."  (*Id.* at 6).  The plaintiffs emphasize that their federal claims "were not raised nor could they have been raised because, as noted before, the state court flatly refused to hear them."  (*Id.* at 6).  The plaintiffs also argue that the *Rooker–Feldman* doctrine does not apply because they "never asked this Court to review the decision of the state court."  (*Id.* at 7).  Rather, the plaintiffs contend that "all of the injuries for which Plaintiffs seek damages arise from the Defendant's violations of various civil rights laws—none arise from the decision of the state court."  (*Id.* at 7).

The WISD argues that the plaintiffs have failed to show a manifest error of law or fact.  Noting that "the Waller County court issued a final, binding judgment against the Plaintiffs as to the claims that they did raise and *the claims that they could have raised*, including their federal claims," the WISD argues that the fact that the plaintiffs did not attempt to plead their federal claims in the state court with jurisdiction to hear them, and the fact that the plaintiffs did not attempt to present witnesses as to these claims, does not provide the plaintiffs the opportunity to try those claims in federal court.  (Docket Entry No. 34 at 4).  The WISD contends that "[d]espite Plaintiffs' failure to effectively assert their federal claims in state court, the claims were nonetheless adjudicated" because they could have been alleged in that court, but were not.  (*Id.* at 4).  The WISD also argues that this court has no jurisdiction over the plaintiffs' federal-law claims under the *Rooker–Feldman* doctrine.  The WISD points out that in their third amended federal complaint, the plaintiffs ask this court to declare that the Waller County court's final judgment "unlawfully encroached upon the jurisdiction of this Court by (1) purporting to compel the parties to bring their federal claims before the state court and (2) by adjudicating by default claims that were pending before this court."  (*Id.* at 7 (quoting Docket Entry No. 31 at 10)).  The WISD argues that "*Rooker–Feldman* bars litigation when the injury stems from a state court judgment" and contends that the plaintiffs "are alleging that the state court decision caused their injury." (*Id.* at 6–7).

The parties' contentions are addressed below.

### IV.    Preclusion

#### A.    The Legal Standard

A federal court must give a state-court judgment the same preclusive effect as that judgment would have under the law of the state in which the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Under Texas law, *res judicata* "precludes relitigation of claims that have been finally adjudicated, *or that arise out of the same subject matter and that could have been litigated* in the prior action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996) (emphasis added); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007) (quoting *Amstadt*, 919 S.W.2d at 652)).  *Res judicata* "requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt*, 919 S.W.2d at 652.

The plaintiffs do not challenge that the parties in the two proceedings were identical for the purposes of claim preclusion.  Although plaintiffs Jackson and Narmah were not named parties in the WISD bond-validation proceeding, the EDJA states that a bond-validation proceeding is "a class action binding on all persons" who reside or own property within the territory of the bond issuer or are taxpayers of the bond issuer.  TEX. GOV'T CODE § 1205.023.  Plaintiffs Jackson and Narmah are WISD residents.  This court found in its March 24, 2008 memorandum and order that the publication notice of the WISD bond-

validation proceeding under section 1205.043 of the EDJA was constitutionally sufficient, such that the Waller County court had personal jurisdiction over the plaintiffs and over all other WISD residents, property owners, and taxpayers, as necessary for preclusive effect. The Supreme Court recently recognized that "a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process." *Taylor v. Sturgell*, --- S. Ct. ----, 2008 WL 2368748, at *11 (June 12, 2008). The Court noted that "in providing for actions vindicating a public interest," Congress and the States "may limit the number of judicial proceedings that may be entertained." *Id.* at *15 (internal punctuation omitted) (quoting *Richards v. Jefferson County*, 517 U.S. 793 (1996)).

In their motion to alter and amend, the plaintiffs do not challenge this court's holding that the publication notice of the WISD bond-validation proceeding was constitutionally sufficient. Nor do they dispute that the parties in the state-court proceeding and this federal-court proceeding are identical for the purposes of claim preclusion. The bond-validation procedure established by EDJA is precisely the kind of "special statutory scheme" that the Supreme Court has found "may expressly foreclose successive litigation by nonlitigants" in "actions vindicating a public interest." *Id.* at *11, 15.

The plaintiffs do challenge whether the state court issued a final judgment on the merits of the claims that they are raising in this federal court. The plaintiffs argue that their federal challenges to the validity of the bond election and the bonds themselves did not need to be raised in, and effectively could not have been raised in, the state-court proceeding.

13

**B.     The Relationship Between the State and Federal Proceedings**

Texas courts follow the "transactional approach" of the RESTATEMENT (SECOND) OF
JUDGMENTS, § 24(1), under which "a subsequent suit is barred if it arises out of the same
subject matter as the prior suit, and that subject matter could have been litigated in the prior
suit." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (citing *Barr v.
Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)).  "Any cause of action which
arises out of those same facts should, if practicable, be litigated in the same lawsuit." *Id.*
(quoting *Barr*, 837 S.W.2d at 631).

The plaintiffs' federal-law claims challenging the validity of the bond election, of the
bonds, and of the proposed expenditures relating to the bonds, clearly "arise[] out of the same
subject matter as the prior suit." *Citizens Ins. Co. of Am.*, 837 S.W.2d at 631.  In the prior
suit in Waller County, the plaintiffs challenged the validity of the same bond election, bonds,
and proposed expenditures.  The Waller County proceeding was a declaratory judgment
bond-validation suit under the EDJA.  The WISD sought an expedited declaratory judgment
that: it had the authority to issue the bonds; that the WISD's actions in authorizing the bonds
were legal and valid; that the proposed expenditures of the money raised by the issuance of
the bonds were legal and valid; and that the bonds themselves were legal and valid.  (Docket
Entry No. 7, Ex. L).  In his answer in intervention, Charleston did not assert a federal equal
protection or other constitutional challenge.  Instead, he sought to dismiss the WISD's suit
"for lack of jurisdiction" or, in the alternative, requested that the state-court suit be abated

14

during the pendency of the federal-court suit. (*Id.*, Ex. Q).  At the trial in the Waller County court, Charleston argued that the state-court suit should be abated in favor of the suit he had filed in federal court that morning.  *See Charleston v. Waller Indep. Sch. Dist.*, *244 S.W.3d 555*, 559 (Tex. App.—Houston [1st Dist.] 2007, mand. denied); (Docket Entry No. 7, Ex. B). Charleston argued that he raised issues in his federal-court suit that he did not raise in any of his state-court filings and argued that these federal-law claims would "take priority" over the state-court suit.  (Docket Entry No. 7, Ex. B at 19).  Charleston acknowledged that the relief he sought in the federal-court suit was the mirror image of the relief the WISD sought in the state-court suit: in the state-court suit, the WISD sought a declaration of bond validity and in the federal-court suit, Charleston sought a declaration of invalidity.   In both proceedings, Charleston sought a declaration that the bond election and the bonds themselves were invalid, although in the state court Charleston relied on state-law grounds and in this federal court he relied on federal-law grounds.

The claims the plaintiffs asserted in federal court, challenging the validity of the bond election and the bonds and the constitutionality of the EDJA's notice provision, arise out of the same subject matter as the claims asserted in the Waller County court proceeding.  The subject matter is the allocation of bond proceeds proposed in the voter-approved facilities-improvement bond plan, the manner in which the WISD sought authorization for the bonds through the local election, and the manner in which the WISD sought validation of the bonds under the EDJA.  The relief the plaintiffs seek from this court is the same relief that they

15

sought from the state court: a declaration that the bond election and the bonds are invalid and an injunction against the issuance of the bonds and the expenditure of the bond proceeds. The state and federal court proceedings clearly arise out of the same subject matter.

### C.     The Scope of the EDJA Proceeding

The plaintiffs contend that because "the state court did not hear and, in fact, *refused to hear* Plaintiff Charleston's civil rights claims," the Waller County court's decision "cannot possibly be *res judicata* with respect to the Plaintiffs' federal claims." (Docket Entry No. 23 at 1, 4). The plaintiffs relatedly assert that "[t]he state court's final judgment made no finding with respect to Plaintiffs' federal claims." (Docket Entry No. 38 at 3). The plaintiffs' arguments do not take into account that the Waller County court sustained an objection to the plaintiffs' questions challenging the planned allocation of the bond proceeds as racially discriminatory because the plaintiffs had not asserted any such claims in their pleadings or court submissions. The record does not support the plaintiffs' assertions that the Waller County court unilaterally "restricted the trial to matters of state procedural law." (Docket Entry No. 23 at 4). Both the Waller County court and counsel for the WISD noted, and Charleston's counsel did not dispute, that the plaintiffs' pleadings in the Waller County court challenged only the May 2007 bond election only under state law and did not allege racial discrimination or violations of the state or federal constitutions. The Waller County judge stated that "[t]he scope of this hearing does not lend itself to [an examination of the constitutionality of the bond proceeds allocation]," but that was in the context of the WISD's

objections that the intervenors had decided not to allege that the bonds or the allocation of the proceeds was unconstitutional.  (Docket Entry No. 23, Ex. A at 96–97).

The plaintiffs do not contend that they were prevented from alleging federal-law grounds for challenging the validity of the bond election and the bonds in the Waller County proceeding.  Rather, the record shows that the plaintiffs decided not to assert their federal-law grounds in the Waller County proceeding.  A party "who wishes to run the risk of preclusion" by "attempting to split a cause of action by advancing only part of it in the first suit . . . should be free to do so."  WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION, § 4407 (2d ed. 2002); *see also Tex. Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 501 (5th Cir. 1988) ("[A] single cause of action or claim cannot be 'split' by advancing one part in an initial suit and attempting to reserve another part for a later suit." (citing CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION § 4402 (1st ed. 1981)));  *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 11, 15 (D.C. Ill. 1980) ("Broadly speaking, a party always has the option or election of raising fewer than all the potential theories of relief that might be available.  However, it is the rule that when a party can present all grounds in support of his cause of action, he must do so, if at all, in the proceeding on that cause of action."), *aff'd in part and rev'd in part*, 745 F.2d 441 (7th Cir. 1985), *cert. denied*, 471 U.S. 1125 (1985), *quoted in* WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE, JURISDICTION, § 4407 (2d ed. 2002).

Although Charleston did not plead any federal-law claims in the Waller County bond-validation declaratory judgment proceeding, he had the opportunity to do so. State and federal courts both have jurisdiction over claims arising under federal law unless Congress has expressly divested the state courts of their jurisdiction over a federal cause of action. *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990). The plaintiffs have not contended in their filings in this court that Congress has given federal courts exclusive jurisdiction over their claims under the Voting Rights Act, the Civil Rights Act, the Equal Educational Opportunity Act, or the Fourteenth and Fifteenth Amendments. The EDJA allows a bond issuer to seek a declaratory judgment as to its authority to issue public securities; the legality and validity of the public security authorization; "the legality and validity of each expenditure or proposed expenditure of money relating to the public securities;" and "the legality and validity of the public securities." TEX. GOV'T CODE § 1205.021. The WISD sought a declaratory judgment that the proposed bonds are "lawful and valid obligations and contracts of the District" that "have been confirmed and approved by [the Waller County court]." (Docket Entry No. 7, Ex. L at 9). The plaintiffs have not shown that had they asserted their federal-law challenges to the validity of the bond election and bonds in the state-court proceeding, that court would not have adjudicated their claims.

The plaintiffs argue that they have a right to bring their federal claims in this federal court and cannot be precluded from doing so on the ground that they could have brought those claims in the state bond-validation proceeding. The plaintiffs also argue that time

allowed to prepare for the state bond-validation proceeding was too short to allow them fairly to present their federal-law challenges to the validity of the bond election and the bonds.

Many states have bond-validation statutes similar to the EDJA. The purpose of such statutes is to establish a mechanism for a "speedy final resolution of all contestants' claims" and "to dispose of public securities validation proceedings under the statute with dispatch." *Buckholts Indep. Sch. Dist. v. Glaser*, 632 S.W.2d 146, 151 (Tex. 1982), *quoted in Narmah v. Waller Indep. Sch. Dist.*, --- S.W.3d ----, 2008 WL 863963 (Tex. App.—Houston [1st Dist.]Mar. 25, 2008, no pet.). "The legislature enacted the Expedited Declaratory Judgment Act to provide a method of adjudicating the validity of public securities in an efficient and quick manner." *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied) (citing *Hatten v. City of Houston*, 373 S.W.2d 525, 534 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.)); *accord Taylor v. Sturgell*, --- S.Ct. ----, 2008 WL 2368748, at *15 (June 12, 2008) (noting that in "public-law" litigation, "we may assume that the States have wide latitude to establish procedures to limit the number of judicial proceedings that may be entertained" (internal punctuation omitted) (quoting *Richards v. Jefferson County*, 517 U.S. 793 (1996))).

The EDJA and other similar state bond-validation statutes allow a bond issuer to validate bonds that the voting public has approved and state that a final judgment validating such bonds is conclusive as to each "adjudicated matter" and "each matter that could have been raised." *See* TEX. GOV'T CODE § 1205.151(a)-(b) (stating that a final judgment holding

19

that "each public security authorization and expenditure of money relating to the public securities was legal" is "binding and conclusive" as to "each adjudicated matter and each matter that could have been raised").  Many states have similar preclusion provisions in their bond-validation statutes.  *See, e.g.*, CAL. CIV. PROC. § 870 (2008) (stating that a judgment as to the validity of a bond election or other public agency's action  "shall . . . without limitation . . . thereupon become and thereafter be forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other person, and the judgment shall permanently enjoin the institution by any person of any action or proceeding raising any issue as to which the judgment is binding and conclusive"); FLA. STAT. § 75.09 (2008) ("If the judgment validates such bonds . . . such judgment is forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby . . . and the validity of said bonds . . . shall never be called in question in any court by any person or party."); GA. CODE § 36-82-78 (2007) ("[T]he judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor."); LA. REV. STAT. § 13:5129 (2008) ("In the event the decree of the bond validates the bonds . . . such decree shall be forever binding and conclusive as to the validity of the bonds . . . and as to all matters adjudicated and as to all objections presented or which might have been presented in such proceeding, and shall constitute a permanent injunction against the institution by any person of any action or

proceeding contesting the validity of the bonds or any other matter adjudicated or which might have been called in question in such proceedings.").

Courts determine the preclusive effect of a state-court judgment in a bond-validation proceeding based on the language and scope of the bond-validation statute and the issues raised in the proceeding.  In *Snell v. Johnson County Sch. Dist.*, 86 P.3d 248 (Wyo. 2004), objectors challenged the issuance of school bonds several months after the bond election, alleging that the bond election was "void ab initio" under state law and that use of the bond proceeds violated the state constitution's "ninety percent bonded indebtedness requirement." 86 P.3d at 253.  The school district argued that the objectors were barred from challenging the bonds because a state statute limited the time for such a contest to fourteen days "after the result of the election has been determined." *Id.*  The *Snell* court found that because the statute required all election contests to be filed within fourteen days of the election results, the objectors' challenges to the election itself were barred.  "The obvious purpose of the short timeframe within which election contests must be filed is to assure finality of the election process." *Id.* at 255.  In contrast, the objectors' state constitutional challenges to the use of the bond proceeds were not barred because the law did not require such challenges to be brought within a defined period.  "Simply because the legislature sought election finality does not mean taxpayers were forever foreclosed from challenging the manner in which school districts use the proceeds from the bonds authorized by such an election." *Id.*

21

In *United States v. Lawrence County Sch. Dist.*, 606 F. Supp. 820 (S.D. Miss. 1984), the federal district court found that the plaintiffs' challenge to the allocation of school bond proceeds in federal court was not barred by a state chancery court's final judgment in the bond-validation proceeding.  The plaintiffs contended that the allocation of the bond funds violated a federal-court desegregation order issued fifteen years earlier.  The plaintiffs had not objected when the school board initiated the statutory bond-validation suit in chancery court, as the state statute provided.  Instead, after a chancery court issued the judgment validatng the bonds, the plaintiffs sued in federal court and alleged that the proposed expenditure of the bond funds violated the desegregation decree.  The *Lawrence County* federal district court held that the chancellor's validation order did not preclude the plaintiffs' claims because the plaintiffs did not challenge the bonds' validity in federal court and the state bond-validation statute did not extend the scope of the bond-validation proceeding to challenges to expenditure of the bond funds.  The *Lawrence County* court found that the "chancery court proceeding was not the appropriate forum for raising these claims, and, in fact, under Mississippi law, the chancellor was without authority to consider them."  606 F. Supp. at 821.  The court found that the plaintiffs' challenge to the bond expenditures was "not barred by res judicata because the issues were not and could not have been resolved in the state court action."  *Id.* at 822.

In contrast, courts have found that bond-validation proceedings may preclude later federal-court claims if the proceeding is under a statute that encompasses such claims and

there was an opportunity to raise them.  For example, in *Cal. Statewide Cmties. Devt. Auth. v. All Persons Interested in the Matter of the Validity of a Purchase Agreement*, 152 P.3d 1070 (Cal. 2007), the state court considered the objectors' claims that a bond issuance violated the Establishment Clause in the United States Constitution by funding sectarian schools.  The claims were heard in a bond-validation proceeding held under the California statute that allowed the public agency to bring a proceeding in rem to determine "the validity" of the bonds and bond expenditures.  Similarly, in *Va. College Bldg. Auth. v. Lynn*, 538 S.E.2d 682 (Va. 2000), the court in which the state bond-validation proceeding was filed considered the objectors' claims that the bonds violated the Constitution's Establishment Clause.  The proceeding was filed under VA. CODE § 15.2-2651, which allows a political subdivision to bring an action "to establish the validity of the bonds, the legality of all proceedings taken in connection with the authorization or issuance of the bonds, the validity of the tax or other means provided for the payment of the bonds, and the validity of all pledges of revenue and of all covenants and provisions which constitute a part of the contract between the issuer and the owners of the bonds."  *See also Indus. Devt. Auth. of Albemarle County v. Mohler*, No. CL99-8127, 2000 WL 725301 (Va. Cir. Apr. 3, 2000) (considering objectors' claims that a bond issuance violated the Establishment Clause in a bond-validation proceeding held under VA. CODE § 15.2-2651).

When a state statute creating a bond-validation proceeding is broadly drafted, like the Texas EDJA, and contemplates that challenges to a bond issuance's legality and validity to

23

must be brought in such a proceeding, the judgment entered in the bond-validation proceeding has preclusive effects on later federal challenges to the bonds. *See, e.g.*, *Sticklen v. City of Middletown*, 779 F.2d 52, at *2–3 (6th Cir. 1985) (finding that the plaintiffs' challenge under 42 U.S.C. § 1983 to a county's bond issuance and bond election procedure was barred by *res judicata* because the plaintiffs had failed to bring this challenge in the county's bond-validation suit, brought under an Ohio statute that broadly allowed bond-validation actions "for the purpose of obtaining an adjudication of [a bond issuer's] authority to issue the securities and the validity of the proceedings taken and proposed to be taken in connection therewith, including any assessment of taxes to be levied"); *Turpen v. Rabun County Bd. of Comm'rs*, 554 S.E.2d 727 (Ga. Ct. App. 2001) (finding that the Georgia bond-validation statute "prevents any collateral attack by the county, county residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene or appeal" and that "a judgment validating revenue bonds or certificates from which no timely appeal is filed, is conclusive on the question of the validity of the bonds and the security therefore," even if "the judgment of validation is unconstitutional or arguably void").

The courts analyzing the preclusive effects of judgments in bond-validation proceedings recognize and emphasize that an efficient and final adjudication of a bond issuance's validity is necessary to "settle promptly all questions about the validity of [the bond issuer's] action" and to "limit the extent to which delay due to litigation may impair a public agency's ability to operate financially." *Cal. Commerce Casino, Inc. v.*

*Schwarzenegger*, 53 Cal. Rptr. 3d 626, 636 (Cal. Ct. App. 2 Dist. 2002) (citations omitted);

*see also Denham Springs Econ. Dev. Dist. v. All Taxpayers, Property Owners and Citizens*

*of the Denham Springs Econ. Dev. Dist.*, 945 So.2d 665, 685 (La. 2006) ("In recognition of

the unique nature of municipal bonds and the importance of insuring their marketability,

Louisiana constitutional and statutory provisions provide an exclusive method to expedite

all proceedings involving the validity of bonds and the security therefor."). In addressing a

"collateral attack" on the validity of municipal bonds that a plaintiff brought following a

bond-validation proceeding, the Georgia Supreme Court observed:

> [P]reclusion is necessary to protect the ability of governmental
> bodies to obtain long-term financing in the bond market.
> Potential purchasers would be reluctant to invest in the state's
> bonds without the assurance that the revenue bonds and their
> security are not subject to collateral attacks after a court with
> proper jurisdiction has entered a final validation order. Any
> perceived risk in the revenue bonds as an investment would
> impede the ability of state and local governments to finance
> needed public improvement projects.

*Quarterman v. Douglas County Bd. of Comm'rs*, 602 S.E.2d 651, 653 (Ga. 2004). Because

the interests in finality and repose carry particular weight in bond-validation proceedings due

to the nature of the interests at stake, courts have refused to disturb the finality of a judgment

as to a bond issuance's validity by allowing subsequent challenges that were not raised

during the appropriate bond-validation proceeding. *See, e.g.*, *Woodham v. City of Atlanta*,

657 S.E.2d 528, 531 (Ga. 2008) (noting that "the Bond Validation Law is the sole means for

a citizen-intervenor with notice to contest the validity of the revenue bonds," and holding that

"[s]ince [the plaintiff's] claims were adequately addressed and adjudicated in the validation

proceeding, his [subsequent] declaratory judgment petition [challenging the allegedly

improper diversion of bond funds to noneducational projects] was properly dismissed");

*McLeod v. Vista Unified Sch. Dist.*, 71 Cal. Rptr. 3d 109, 120 (Cal. Ct. App. 4 Dist. 2008)

(finding that the plaintiffs, in asserting taxpayer waste causes of action to prohibit the

defendant school district from issuing the remaining bonds authorized by an approved

proposition, "challenge[d] the validity of the bond issuance," such that the plaintiffs' action

"was subject to the validation statutes" and was barred under the statutes' 60-day limitations

period); *Cal. Commerce Casino*, 53 Cal. Rptr. 3d at 644 (holding that the plaintiffs' claims

that the bonds violated the California constitution "were an attack on the validity of the

[bonds] and therefore should have been raised in a reverse validation action within 60 days");

*Denham Springs*, 945 So.2d at 687 (finding that the plaintiffs' claims challenging the ability

of other taxing entities to cooperate in the bond-funded project and to pledge their tax monies

to secure the bonds were barred because the period for challenges to a bond resolution had

expired, "and a conclusive legal presumption of the validity of the bonds and the security

provisions was established," after which time "courts have no authority to consider any

challenges as to these matters"); *Quarterman*, 602 S.E.2d at 653 (holding that the plaintiff's

"collateral attack on the revenue bonds" on the ground that the defendant county was not

authorized to incur debt for more than one year without holding a separate, additional

referendum on the revenue bonds was barred because a judgment of validation "is conclusive

as to the referendum and all other questions which could and should have been asserted during the bond validation proceedings"); *Keys Citizens for Responsible Government, Inc. v. Fla. Keys Aqueduct Auth.*, 795 So.2d 940, 948 (Fla. 2001) (determining that a "final judgment [as to the validity of bonds] will necessarily foreclose any further challenges"); *Cox v. Ga. Educ. Auth.*, 170 S.E.2d 240, 241 (Ga. 1969) (finding that an order validating school bonds "was conclusive as to the validity of the bonds against . . . [a later] action attacking the constitutionality of the issuance of the bonds" and stating that because the bond-validation judgment "is conclusive against the municipality and the citizens of the municipality upon all questions," the plaintiffs' action asserting that the bonds exceeded the debt limit imposed by the state constitution "can not be maintained").

When the state statute creates a bond-validation proceeding in a court that is fully competent to entertain all challenges to the bonds, whether brought under state or federal law, and when the state statute requires all challenges to be raised in that proceeding, a plaintiff may plead federal constitutional challenges to the bonds in the bond-validation proceeding and in failing to do so risks being precluded from later asserting the challenges in federal court.  By contrast, when the state statute creates a bond-validation proceeding that does not permit a taxpayer to raise federal-law challenges, the courts do not preclude a plaintiff from doing so in a subsequent federal-court suit.  The plaintiffs in this case have not alleged that the Waller County court had no authority to consider their federal-law claims. The EDJA allows a state court to issue a declaratory judgment as to the authority of the bond

27

issuer to issue the bonds; the legality and validity of the bond authorization, including the election at which the bonds were authorized; the legality and validity of each expenditure or proposed expenditure of money relating to the bonds, and the legality and validity of the bonds themselves.  TEX. GOV'T CODE § 1205.021.  In this case, when the plaintiffs intervened in the state-court bond-validation proceeding, they could have pleaded their federal-law claims that the bonds were invalid because of federal-law violations in the bond election, the bonds, and the allocation of the bond proceeds.  The plaintiffs chose not to do so and instead to file a separate federal case to invalidate the bonds on the basis of federal-law violations in the bond election, the bonds, and the proposed bond expenditures.

The plaintiffs argue that the EDJA unconstitutionally conflicts with the Supremacy Clause because it states that a judgment rendered under the act is "binding and conclusive" as to "each adjudicated matter and each matter that could have been raised" and is "a permanent injunction against the filing by any person of any proceeding contesting the validity of . . . any adjudicated matter that could have been raised in the action."  TEX. GOV'T CODE § 1205.151(b), (c).  This statutory recognition of preclusion puts litigants who would challenge a public security issuance on any basis affecting its validity on notice:  if they do not raise the challenge in the EDJA proceeding, they may lose any opportunity to litigate it. It is the application of general preclusion principles, however, not the EDJA statement of preclusion, that supports the result in this case.  The EDJA both permits and requires challenges to bond validity to be brought in the bond-validation proceeding.  The plaintiffs

28

did not bring any federal constitutional challenge to the EDJA when they intervened in the pending state-court validation proceeding filed by the WISD. The plaintiffs instead sought to invalidate the bonds in state court on state-law grounds and in federal court on federal-law grounds (although in the state court, the plaintiffs cross-examined on the federal law issues despite the absence of any pleading raising this claim as a basis for the relief sought).

The plaintiffs cite *General Atomic Co. v. Felter*, 434 U.S. 12, 16 (1977) and *Donovan v. City of Dallas*, 377 U.S. 408 (1964), for the proposition that they were "under no obligation to plead federal claims in state court." (Docket Entry No. 38 at 5). In *General Atomic*, United Nuclear Corp. ("UNC") filed a declaratory judgment action against several utility companies in New Mexico state court, seeking to avoid its obligations under a series of uranium supply agreements. The utility companies subsequently filed three separate suits against General Atomic Co. ("GAC"), UNC's successor under the supply contracts. On notice that GAC might attempt to implead it in one of the federal-court actions, UNC obtained an *ex parte* injunction from the New Mexico state court restraining GAC from suing or filing a third-party suit against UNC. The New Mexico Supreme Court affirmed the injunction. Relying on *Donovan v. City of Dallas*, 377 U.S. 408 (1964), the Supreme Court overturned the state-court injunction. The Court stated:

> What the New Mexico Supreme Court has described as 'harassment' is principally GAC's desire to defend itself by impleading UNC in the federal lawsuits and federal arbitration proceedings brought against it by the utilities. This, of course, is something which GAC has every right to do under Fed. Rule Civ. Proc. 14 and the Federal Arbitration Act. The right to

> pursue federal remedies and take advantage of federal procedures and defenses in federal actions may no more be restricted by a state court here than in *Donovan*. Federal courts are fully capable of preventing their misuse for purposes of harassment.

434 U.S. at 18–19. Neither *General Atomic Co.* nor *Donovan* holds that a plaintiff has the right to avoid the preclusive effects of a prior state-court final judgment and relitigate claims in federal court that he brought or could have brought in the prior state-court proceeding. To the contrary, the *Donovan* court noted that if a plaintiff brings federal claims in a later federal-court suit, "whether or not a plea of res judicata in the second suit would be good is a question for the federal court to decide." *Donovan*, 377 U.S. at 412. The Supreme Court has held that "it is in cumbent on the [plaintiff] to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that by piecemeal, as by presenting a part only of the available grounds and reserving others for another suit, if failing in that." *Grubb v. Pub. Utils. Comm'n of Oh.*, 281 U.S. 470, 470 (1930). In this case, the plaintiffs could have alleged their federal-law claims in the Waller County proceeding, but instead did so in a separate simultaneous federal lawsuit seeking the same relief they sought in the state court, but on federal-law rather than state-law grounds.

In their intervention in the Waller County bond-validation proceeding the plaintiffs attempted, in effect, to reserve their federal and constitutional challenges to the bonds for litigation in federal court. Courts have allowed plaintiffs proceeding in state court to reserve federal claims for litigation in a federal forum only in limited circumstances. In *White v.*

*Gautier Util. Dist. of Jackson County* (*In re Validation of $7,8000,000 Combined System Revenue Bond*), 465 So.2d 1003 (Miss. 1985), the Mississippi Supreme Court noted that the plaintiffs asserted such a reservation.   In *White*, objectors brought a bond-validation declaratory judgment action against a county utility district in state court to oppose the issuance of proposed utility system revenue bonds.   The objectors raised state constitutional and statutory challenges to the bonds in the state-court proceeding and federal constitutional challenges in a separate federal-court proceeding in the Southern District of Mississippi.   On appeal, the Mississippi Supreme Court noted that the objectors "do indeed believe that their federally secured due process rights have been abridged but have reserved such federal constitutional issues for litigation in a federal forum."   465 So.2d at 1018 n.6.   Citing *England v. La. State Board of Med. Examiners*, 375 U.S. 411 (1964), the *White* court stated that "[u]nder the circumstances we here adjudicate no federal issues."   *Id.*   The court proceeded to adjudicate the objectors' state-law claims and ultimately validated the bonds. *White*, however, was decided before the "reservation" allowed under *England* was significantly narrowed by the Supreme Court.

In *England*, a group of plaintiffs who had graduated from chiropractic school sought to practice in Louisiana without complying with the educational requirements of the state's Medical Practice Act.   The plaintiffs sued the state board of medical examiners in federal district court, challenging that the Act was unconstitutional.   The district court stayed the case, invoking *Pullman* abstention on the ground that the Louisiana courts had not yet

31

determined whether the Act applied to chiropractors.  The plaintiffs subsequently raised this issue in a Louisiana state court, which held that the Act did apply and that this application did not violate the Fourteenth Amendment.  The Louisiana Supreme Court declined review. When the plaintiffs returned to federal district court to proceed with their federal claim, the district court granted the defendants' motion to dismiss the action on the ground that the Louisiana state courts had already addressed the plaintiffs' constitutional challenge and the district court had no jurisdiction to review the state courts' decision.  The Supreme Court reversed, finding that there were "fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims."  375 U.S. at 415.  Because "[t]he possibility of appellate review by this Court of a state court determination may not be substituted, against a party's wishes, for his right to litigate his federal claims fully in the federal courts," the *England* Court held that a plaintiff asking a state court to construe a state statute may reserve his federal challenges to the statute's constitutionality for litigation in federal court.  *Id.* at 417.

Relying on *England*, the *White* court declined to adjudicate the objectors' federal constitutional challenges or to examine the validity of the objectors' reservation of those challenges for litigation in federal court.  Since *White* was decided, however, federal courts have limited the right to reserve federal claims under *England* to *Pullman* abstention cases.

32

In *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 339 (2005), the Court held that *England* reservations could only apply in those cases involving "federal constitutional challenges to a state statute that can be avoided if a state court construes the statute in a particular manner." The Court noted: "[I]ssues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to hear their federal claims relitigated in federal court. This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by *statute* or prudential rules" *San Remo Hotel*, 545 U.S. at 342 (emphasis added).

*San Remo* followed *Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir. 1991), *cert. denied*, 502 U.S. 866 (1991), in which the Second Circuit limited a plaintiff's reservation of federal claims under *England* to *Pullman* abstention cases and noted that if "a federal plaintiff could avoid the preclusive effects of the related state court proceeding by reserving its federal claims after the federal court abstains under *Younger*, then the federal court would fail to give effect to the ability of the state court to resolve federal constitutional questions, thereby undermining one of the central purposes behind *Younger* abstention"). Since *San Remo*, courts have narrowly applied any ability to "reserve" federal claims for a federal forum. *See, e.g.*, *Lange v. City of Batesville*, 160 Fed.Appx. 348, 353 n.25 (5th Cir. 2005) (rejecting plaintiffs' argument that a prior state-court judgment should not preclude relitigation of their claims in federal court because they were "forced" to bring their claim under a state "bill of exceptions" process, citing *San Remo* for the proposition that a state-

court judgment may deprive a plaintiff of the right to relitigate his federal claims in federal court, contrary to the plaintiff's wishes).   The plaintiffs in this case have not alleged facts that support *Pullman* abstention and an *England* reservation of federal claims.

The Supreme Court has also made clear that state-court judgments have issue- and claim-preclusive effects on subsequent federal-court proceedings that the federal courts must honor under the Full Faith and Credit Clause, 28 U.S.C. § 1738.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84 (1984); *see also Hallco Texas, Inc. v. McMullen County*, 221 S.W.3d 60, 61–62 (Tex. 2006) (noting that the Supreme Court found in *San Remo* that "the purpose of the *England* reservation is not to grant plaintiffs a second bite at the apple in their forum of choice" and that the Supreme Court "has broadly construed [the Full Faith and Credit Statute] to require 'all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so'" (internal citations omitted)).  If a plaintiff wishes to avoid these preclusive effects and still litigate his federal claims in a federal forum, the plaintiff must proceed first in federal court.  *See Migra*, 465 U.S. at 84–85 ("[P]etitioner could have obtained a federal forum for her federal claim by litigating it first in a federal court."); *San Remo Hotel*, 545 U.S. at 344 ([Petitioners] . . . could have proceeded first in federal court had they wanted to litigate their . . . federal claim in a federal forum." (internal punctuation and citation omitted)).

The plaintiffs argue that as a practical matter, the short timetable under the EDJA did not give them an effective opportunity to prepare for a trial on their federal claims.  But the

federal claims that they are precluded from litigating here are narrow.  They are limited to the federal claims that, if upheld, would require invalidating the bonds and the proposed expenditure of the bond funds.  There is no preclusion limit on the plaintiffs' ability to raise in this case the federal and constitutional challenges that do not seek to invalidate the bonds and bond funds.  In addition, the bonds were authorized in early 2007 and the election was held in May 2007.  The bond-validation proceeding occurred in August 2007.  The plaintiffs did have time to develop and prepare to litigate their federal claims.

Because the Waller County court issued a final judgment on the merits of the WISD's bond-validation claims, and because Charleston could have brought his federal-law claims seeking to invalidate the bonds based on federal-law violations in the bond election, the bond issuance, and the proposed expenditures in the Waller County bond-validation proceeding, the plaintiffs cannot assert those claims in this court.  The plaintiffs' claims challenging the allegedly inequitable allocation of other funding for Jones Elementary and the constitutionality of the WISD's election practices are not affected by this holding.

## IV.  *Rooker–Feldman*

The plaintiffs' argument that the *Rooker–Feldman* doctrine does not apply is also unpersuasive.  To support their argument, the plaintiffs reiterate their contention that under *Donovan*, "the right to litigate in federal court is granted by Congress and, consequently, 'cannot be taken away by the state.'" (Docket Entry No. 23 at 7).  This argument relies on a limited reading of *Donovan*.  After acknowledging that a plaintiff has a right to bring a

federal-law claim in federal court, the *Donovan* court noted: "Whether or not a plea of res judicata in the second suit would be good is a question for the federal court to decide."  377 U.S. at 412.  The *Donovan* Court did not hold that an unsuccessful state-court plaintiff may relitigate claims in federal court that were brought or should have been raised in the state-court proceeding.  Contrary to the plaintiffs' arguments, the *Donovan* Court recognized that a federal court may find that *res judicata* bars a plaintiff's claims in federal court.

The plaintiffs also argue that the *Rooker–Feldman* doctrine does not apply because "all of the injuries for which Plaintiffs seek damages arise from the Defendant's violations of various civil rights laws—none arise from the decision of the state court." (*Id.* at 7).  The plaintiffs assert that "African-American students were suffering from WISD's racial discrimination 140 years before the state court's bond validation decision on September 24, 2007" and that as a result, the plaintiffs "have clearly alleged racial discrimination that has nothing to do with the state court judgment."  (Docket Entry No. 38 at 6).  Under the *Rooker–Feldman* doctrine, "inferior federal courts do not have the power to modify or reverse state court judgments." *Union Planters Bank Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (quoting *Reitnauer v. Tex. Exotic Feline Found., Inc.*, 152 F.3d 341, 343 (5th Cir. 1998)).  The plaintiffs have alleged historical racial discrimination by the WISD.  But in their original and subsequent amended complaints, the relief the plaintiffs seek is for this court to enjoin the WISD from issuing its bonds and proceeding with its facilities-improvement plan. In their third amended complaint, the plaintiffs also ask this court to declare that the EDJA

36

is unconstitutionally broad and in conflict with the Texas and United States constitutions. (Docket Entry No. 31 at 11).  Such relief requires this court to reject the Waller County court's judgment that the May 2007 bond election and the bonds are valid.  The plaintiffs' claims are barred by the *Rooker–Feldman*, which precludes a federal court from exercising original jurisdiction to "review and reverse" state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

The plaintiffs have failed to show a manifest error of law or fact.  See *Schiller*, 342 F.3d at 567.  The plaintiffs' motion to amend is denied.

## IV.   Conclusion and Order

The plaintiffs' motion to amend and alter this court's March 24, 2008 Memorandum and Order dismissing the plaintiffs' claims challenging the validity of the bond election or the bonds under Rule 59 is denied, but its impact is clarified.  The plaintiffs may not litigate in this suit their claims that the 2007 bond election was invalid; that the bonds themselves are invalid; and that the proposed expenditure of money relating to the bonds is invalid.  The judgment in the bond-validation proceeding does not, however, limit the plaintiffs' ability to litigate in this federal court their claims that the WISD violates federal equal protection and other rights, including under 20 U.S.C. § 1706, because the district provides "unequal educational opportunities for minority students in and around the City of Prairie View," provides "unequal distribution of bond funds to Jones Elementary," and because "facilities in Prairie View are inferior to those found elsewhere in the district."  (Docket Entry No. 1

at 4–6).   And the state-court bond-validation proceeding judgment does not limit the plaintiffs' pursuit of the claims they raised in the third amended complaint, challenging the constitutionality of at-large voting for school board trustees and other aspects of school board elections and governance.

SIGNED on June 27, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge